UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YVONNE DOWNIE,

                        Plaintiffs,

    -v-

CARELINK, INC., and ENA BAILEY et al.,

                        Defendants.

Civil Action No. 1:16-cv-5868 (JPO)

Hon. J. Paul Oetken

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

David Prager, Esq.
*Attorneys for Defendants*
Bond, Schoeneck & King, PLLC
600 Third Avenue, 22nd Floor
New York, New York 10016
T: 646.253.2320
F: 646.253.2301

On the Brief:
Katherine McClung, Esq.
Kaveh Dabashi, Law Clerk

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

INTRODUCTION / PRELIMINARY STATEMENT ............................................................1

I.    THIS COURT SHOULD NOT CERTIFY A CLASS OF
AIDES WHO WORKED LIVE-IN CASES CLAIMING THEY
SHOULD HAVE ALWAYS BEEN PAID FOR 24 HOURS,
RATHER THAN 13 HOURS.................................................................................5

    A.    The Premise For This Claim – That All Live-In Aides Are
Automatically Entitled To 24-Hours of Pay For Each
Shift – Is Legally Incorrect ..............................................................5

    B.    Federal Courts Have Uniformly Rejected the Premise of Plaintiff's
Class Claim ..........................................................................................6

    C.    NY DOL Amended The Regulation That Is The Premise For Plaintiff's
Claim, With The Express Purpose of Excluding This 24-Hour Claim.............8

    D.    NY DOL's Interpretation Is Consistent With Federal Law ............................11

    E.    NY DOL's Interpretation Is *In Pari Materia* With Those of NY DOH
On The Same Subject...........................................................................13

    F.    Plaintiff's Alternative Claim That Some Aides Had Uncompensated Sleep
or Meal Interruptions Does Not Meet The Standards For Class Treatment ....15

II.    NO CLASS SHOULD BE CERTIFIED FOR PLAINTIFF'S FLSA CLAIM............18

    A.    The 2-Year Limitations Period For Non-Willful FLSA
Actions Has Run ..................................................................................22

    B.    In The Absence of The FLSA Claim, This Court
Should Decline Jurisdiction Over The State Law Claims ...............................22

III.    NO CLASS SHOULD BE CERTIFIED ALLEGING "SPREAD OF
HOURS" CLAIMS BECAUSE PLAINTIFF WAS PAID MORE
THAN MINIMUM WAGE, AND BECAUSE SHE HAS NOT
MET THE STANDARDS FOR CLASS CERTIFICATION .....................................23

IV.    NO WAGE-THEFT PREVENTION ACT CLASS SHOULD BE CERTIFIED........25

V.    NO CLASS SHOULD BE CERTIFIED ALLEGING VIOLATIONS OF
THE N.Y. HOME CARE "WAGE PARITY" LAW .................................................29

      A.     Plaintiff Has Adduced No Evidence To Support This Claim..........................30

      B.     Plaintiff's Claims Are Not "Typical" of Others Who Were Subject To Differing Wage Parity Levels, Locations and Payors......................................30

VI     PLAINTIFF IS NOT AN ADEQUATE CLASS REPRESENTATIVE ....................33

CONCLUSION.......................................................................................................35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Alves v. Affiliated Home Care of Putnam, Inc.,
  2017 WL 511836 (S.D.N.Y. Feb. 7, 2017)..................................................................20

Andreyeyeva v. New York Health Care, Inc.,
  153 A.D.3d 1216 (2d Dep't 2017) ...........................................................................3

Bangoy v. Total Homecare Solutions, LLC,
  2015 WL 72674747 (S.D. Oh. Dec. 21, 2015) ............................................20, 21

Bonn-Wittingham v. Project Office for Homecare Referral, Inc.,
  2016 WL 7243541 (E.D.N.Y. Dec. 14, 2016) ...........................................................6

Bonn Wittingham (II),
  2017 WL 2178426  (E.D.N.Y. May 17, 2017) ........................................................7

Carter v. Tuttnauer USA Co.,
  78 F. Supp. 3d 564 (E.D.N.Y. Jan. 12, 2015) .......................................................27

Cohen v. Viray,
  622 F.3d 188 (2d Cir. 2010)....................................................................................29

Cuzco v. F&J Steaks 37th Street, LLC,
  2014 WL 2210615 (S.D.N.Y. May 28, 2014) .........................................................27

Darvin v. Int'l Harvester Co.,
  610 F. Supp. 255 (S.D.N.Y. 1985) ...................................................................33, 35

In re Gaming Lottery Sec. Litig.,
  58 F. Supp. 2d 62 (S.D.N.Y. 1999) .................................................................33, 35

Gjurovich v. Emmanuel's Mkt.,
  282 F. Supp. 2d 101 (S.D.N.Y. 2003)......................................................................4

Gold v. N.Y. Life Ins. Co.,
  730 F.3d 137 (2d Cir. 2013)....................................................................................28

Guaman v. Krill Contr., Inc.,
  2015 WL 3620364 (E.D.N.Y. June 9, 2015) ..........................................................26

Harris v. Initial Sec., Inc.,
  2007 WL 703858 (S.D.N.Y. Mar. 7, 2007) ............................................................33

Hinckley v. Seagate Hospitality Grp., LLP,
  2016 WL 6524314 (W.D.N.Y. Nov. 3, 2016) .........................................................26

Home Care Ass'n of Am. v. Weil,
   76 F. Supp. 3d 138 (D.D.C. 2014) ............................................................. 19, 20, 22

Home Care Ass'n of Am. v. Weil,
   78 F. Supp. 3d 123 (D.D.C. 2015) ............................................................. 19

Home Care Ass'n of Am. v. Weil,
   799 F.3d 1084 (D.C. Cir. 2015) ............................................................. 19

Jacob v. Duane Reade,
   602 Fed. Appx. 3 (2d Cir. 2015) ............................................................. 4, 30

Kinkead v. Humana, Inc.,
   206 F. Supp. 3d 751 (D. Conn. 2016) ............................................................. 21

Kline v. Wolf,
   702 F.2d 400 (2d Cir. 1983) ............................................................. 33

Lin v. Benihana N.Y. Corp.,
   2012 WL 7620734 (S.D.N.Y. Oct. 23, 2012) ............................................................. *passim*

In re Lloyd's AM. Trust Fund Litig.,
   1998 WL 50211 (S.D.N.Y. Feb. 6, 1998) ............................................................. 33, 35

Lora v. To-Rise, LLC,
   2017 U.S. Dist. LEXIS 112644 (E.D.N.Y. July 18, 2017) (unreported in Westlaw) ............. 25

Malena v. Victoria's Secret Direct, LLC,
   886 F. Supp. 2d 349 (S.D.N.Y. 2012) (Oetken, J.) ............................................................. 25

MCI Telecom. Corp. v. GTE Northwest, Inc.,
   41 F. Supp. 2d 1157 (D. Or. 1999) ............................................................. 21

Moore v. Publicis Groupe SA,
   2012 WL 2574742 (S.D.N.Y. June 29, 2012) ............................................................. 18

Moreno v. Future Care Health Servs., Inc.,
   153 A.D.3d 1254 (2d Dep't 2017) ............................................................. 3

Myers v. Hertz Corp.,
   624 F.3d 537 (2d Cir. 2010) ............................................................. 18

Norman v. Arcs. Equities Corp.,
   72 F.R.D. 502 (S.D.N.Y. 1976) ............................................................. 33, 35

Reiber v. GMAC, LLC,
   547 F.3d 177, 186 (2d. Cir. 2008) ............................................................. 13

Reyes v. Sofia Fabulous Pizza Corp.,
 2014 U.S. Dist. LEXIS 188734 (S.D.N.Y. Apr. 7, 2014) (unreported in Westlaw)...............27

Rui Xiang Huang v. J&A Entm't Inc.,
 2012 WL 6863918 (E.D.N.Y. Dec. 3, 2012) ......................................................................25

Savino v. Computer Credit, Inc.,
 164 F.3d 81 (2d Cir. 1998)..................................................................................................34

Severin v. Project OCR, Inc.,
 2012 WL 2357410 (S.D.N.Y. June 20, 2012) .............................................................. *passim*

Shu Qin Xu v. Wai Mei Ho,
 111 F. Supp. 3d 274 (E.D.N.Y. 2015) ................................................................................25

Silva v. Calle 8, L.L.C.,
 2013 WL 6330848 (E.D.N.Y. Dec. 5, 2013) ......................................................................27

Tokhtaman v. Human Care, LLC,
 149 A.D.3d 476 (1st Dep't 2017) ............................................................................... *passim*

Wal-Mart Stores, Inc. v. Dukes,
 564 U.S. 338 (2011).........................................................................................23, 28, 30

**Statutes**

28 U.S.C. § 1367(c) ............................................................................................................22

29 U.S.C. § 213(a)(15)........................................................................................................18

29 U.S.C. § 255 ...................................................................................................................22

Fair Labor Standards Act (FLSA).............................................................................. *passim*

Federal Rule of Civil Procedure 23 .......................................................................... *passim*

N.Y. Home Care Wage Parity Law, N.Y. Pub. Health Law § 3614-c.........................29, 30, 31, 32

N.Y. Pub. Health Law § 3614-c(2) ....................................................................................29

N.Y. Pub. Health Law § 3614-c(3) ....................................................................................31

N.Y. Pub. Health Law § 3614-c(10) ..................................................................................31

N.Y. Pub. Health Law § 3614-c(3)(a).................................................................................31

N.Y. Pub. Health Law § 3614-c(3)(a) and (b) ...................................................................32

N.Y. Pub. Health Law § 3614-c(1)(b) ...............................................................................32

N.Y. Lab. Law § 195(1)(a), (2)..............................................................................26

N.Y. Lab. Law § 198(1-b) ....................................................................................26

N.Y. Labor Law § 195(3) ......................................................................................28

2014 N.Y. Laws 537 .............................................................................................26

N.Y. Wage Theft Prevention Act, N.Y. Lab. Law § 195.............................25, 26, 27, 28

**Other Authorities**

29 C.F.R. § 522.6 (2015) .......................................................................................19

29 C.F.R. § 552.6 (1975) .......................................................................................19

29 C.F.R. § 785.19 ................................................................................................11

29 C.F.R. § 785.22 ...........................................................................................11, 12

29 CFR 785.20-23 .................................................................................................12

29 CFR Part 785 ...................................................................................................12

29 CFR §§ 785.18-19 ............................................................................................12

10 N.Y.C.R.R. § 766.3 .............................................................................................1

12 N.Y.C.R.R. 142-2.1(b) ................................................................................. *passim*

12 N.Y.C.R.R. 142-2.1(b)(1)-(2) ............................................................................8

12 N.Y.C.R.R. § 142.2.2 ...................................................................................12, 18

12 N.Y.C.R.R. § 142-3.2 .......................................................................................12

18 N.Y.C.R.R. § 505.14(a)(4)...........................................................................2, 13

**OTHER AUTHORITIES CONTAINED IN ACCOMPANYING APPENDIX**

1.  Emergency Rulemaking, Department of Labor, Home Care Aide Hours Worked, State Register, October 25, 2017 (incorporating NY Department of Labor Emergency Regulations, effective October 6, 2017)

2.  NY Department of Labor Opinion Letter, March 11, 2010

3.  NY Department of Labor Opinion Letter, October 27, 1998

4.  NY Department of Labor Opinion Letter, October 20, 1992

5.  "Paying for Live-In 24 Hour Care for Personal Care Services and Consumer Directed Services," Department of Health Policy 14.08, November 24, 2014

6.  NY Department of Health Letter, October 3, 2012

7.  NY Department of Health Advice, Services for Live-In Home Care, July 14, 2017

8.  Docket Sheet for <u>Nasimova v. Attentive Home Care Agency, et al.</u>, 1:16-cv-01005 (E.D.N.Y.) (August 17, 2017 entry)

9.  US Department of Labor Release, "U.S. Court of Appeals Unanimously Upheld DOL Rule, Opinion Effective as of Oct. 13, 2015"

10. NY Department of Labor Opinion Letter, August 26, 2009 (accord NY Department of Labor Opinion Letter, August 7, 2006)

11. NY Department of Health FAQ #3, May 2014

12. 80 Fed. Reg. 55029, September 14, 2015

13. 80 Fed. Reg. 65646, October 27, 2015

14. Docket Sheet for <u>Downie v. Family Home Care Service of Brooklyn and Queens, Inc., et al.</u>, 1:15-cv-03862 (S.D.N.Y.)

Defendants Carelink, Inc. and Ena Bailey (together, "Carelink" or "Defendants") submit this Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification.  Plaintiff is seeking five different classes of Carelink employees relating to different claims, different periods, and different groupings of Carelink employees; all but one of these claims arises under State law (the sole federal claim is described below, point II).  For the reasons set forth below, none of the classes sought by Plaintiff should be certified because Plaintiff has failed to meet her burden of proof to certify any Rule 23 class or FLSA collective.  In fact, many of her claims are not even proper claims as a matter of law.  We have addressed these deficient claims here, but will also shortly cross-move for summary judgment on those claims.

## INTRODUCTION / PRELIMINARY STATEMENT

Plaintiff has been a Home Health Aide since 2005, and has worked for at least a half-dozen home care providers (Downie Dep. 18-23), some of whom she has sued.[1]  She worked for Carelink from October 2012 through August 2015, exclusively on cases known as "live-in" cases (Bailey Aff. 4).  On July 21, 2016, she filed suit against Carelink and its President and Principal Owner, Ena Bailey, alleging a series of State, and one Federal, wage/hour violations.

Like other Licensed Home Care Service Agencies ("LHCSAs"),[2] Carelink provides home care services to elderly and ill patients in their own homes who cannot care for themselves, but who do not require the level of care provided through hospitals or nursing homes.  Carelink employs licensed aides, such as Plaintiff, to provide the services specified in the patient's "plan of care" (See 10 N.Y.C.R.R. § 766.3).  But Carelink does not itself determine the "plan of care"

---

[1]     See App. 14 (Docket Sheet) and accompanying Affidavit of Ena M. Bailey ("Bailey Aff." ¶¶ 3, 19). Deposition extracts are in a separate appendix and are referred to as "Downie Dep. at [page]".

[2]     By way of background, there are approximately 1584 home care agencies like Carelink in New York State. (See profiles.health.ny.gov).  Carelink, with only about 150 employees, is among the very smallest of these agencies, some of whom employ more than 10,000 home aides (Bailey Aff. ¶ 5).  Many hundreds of thousands of patients are serviced by the more than 200,000 home care workers in New York.

or even the "level" of care medically required for the patient.  Rather, those levels of care are clinically determined by the agency designated by the N.Y. Department of Health ("NY DOH"), typically a Managed Long Term Care provider ("MLTC"), or a nursing home or hospital, who then gives the case to agencies like Carelink to perform the specified services at the patient's home (Bailey Aff. ¶ 6).

Carelink and other LHCSAs have no say in the number of hours of service authorized, or in the amount of reimbursement that they are compensated for each case.  Rather, those hours and amounts of reimbursement are set in advance by the MLTC, based on the NY DOH's requirements, predicated on the clinical diagnosis of the patient's conditions and needs.  Put simply, Carelink is paid only for hours medically-approved and authorized by the NY DOH and has no say in this determination (Bailey Aff. ¶ 7).  There is normally no way for providers like Carelink to increase the normal reimbursement level without a change in the medical diagnosis of the patient that warrants some higher, more demanding level of care (Bailey Aff. ¶ 13). Reimbursement for those service hours is the vast majority of Carelink's revenue.  (Bailey Aff. ¶ 8).  From these reimbursements, it must cover virtually every cost of its business.  (Id.). Accordingly, home care is generally considered a "low margin" business (Id.).

As an illustration, the MLTC, pursuant to NY DOH regulations and procedures, only certifies cases as "24-hour live-in" (i.e., the types of cases handled by Plaintiff) if they meet the following clinical designation:  the patient's "need for assistance is sufficiently infrequent" such that the patient is "likely to obtain, on a regular basis, 8 hours of sleep, 5 of which are uninterrupted." 18 N.Y.C.R.R. § 505.14(a)(4).  Based on this clinical diagnosis, Carelink, like other LHCSAs, is authorized to provide only 13 hours of service within the 24-hour live-in shift, and is provided with 13 hours of reimbursement for "live-in" services its aides provide, premised

2

on the medical determination that the aide will routinely be able to sleep 8 hours (5 uninterrupted) and take 3 hours of meal breaks, and thus need only be available for work for the remaining 13 hours of the day.  Directly parallel to this NY DOH regulation are a series of New York Department of Labor ("NY DOL") regulatory opinions (dating back to 1992) which provide for 13 hours of payment in these same live-in cases, unless an unexpected interruption occurs (which are, under the diagnosis, "likely [to be] infrequent").  The NY DOL issued opinion letters in 1998 and 1992 that set forth the same policy (NY DOL Opinion Letters are attached as Appendices 2, 3, 4,[3] and are discussed infra, pp. 5, 7-8 and 10).

The above background is highly relevant to one of Plaintiff's claims, one that is particularly controversial:  Plaintiff seeks to certify a class of aides who worked "24-hour live-in" cases, based on the claim that they should always be paid for 24-hours per shift (including all sleep time and meal break time), rather than for 13 hours, in the normal case.  (P. Memo. at 2-3).[4]  This issue is the subject of appeals now being sought in the N.Y. Court of Appeals by various home care agencies and by industry-groups as amici in a series of State Appellate Division cases[5] cited by Plaintiff (P. Memo. p. 3).  Also, just last month, the NY DOL also issued Emergency Rulemaking to clarify its existing regulations and preclude the very claim being asserted by Plaintiff here.  See 12 N.Y.C.R.R. 142-2.1(b), amended Oct. 6, 2017; see also Emergency Rulemaking, Department of Labor, Home Care Aide Hours Worked, Regulatory Impact Statement, State Register, Oct. 25, 2017 (attached as App. 1 hereto).

---

[3]    Administrative Opinions, Opinion Letters, Regulations and Docket Sheets are attached in the accompanying Appendix ("App").

[4]    Parenthetical citations to "P. Memo." refer to Plaintiff's Memorandum of Law in Support of Motion for Certification of Class and Collective Actions.

[5]    Tokhtaman v. Human Care, LLC, 149 A.D.3d 476 (1st Dep't 2017); Andreyeyeva v. New York Health Care, Inc., 153 A.D.3d 1216 (2d Dep't 2017); Moreno v. Future Care Health Servs., Inc., 153 A.D.3d 1254 (2d Dep't 2017).

The NY DOL did not invoke its emergency powers lightly.  It did so, NY DOL explained, because it determined that the erroneous rulings of the Appellate Divisions (relied upon by Plaintiff here) have left the entire home care industry at risk of collapse, as the result of claims seeking multimillion dollar retroactive liability in a low-margin industry that has for decades relied upon the coordinated expertise of two agencies – NY DOL and NY DOH – as to the number of hours of pay required and authorized for the clinically specified levels and reimbursement.  "The Commissioner must take action now," the NY DOL explained, "to avert an impending crises" (Emergency Rule, Regulatory Impact Statement) and "to prevent the collapse of the home care industry" (id., Specific Reasons Underlying the Finding of Necessity) (App. 1).  This "impending crisis" is nowhere more apparent than at Carelink, a tiny agency who will surely face "imminent collapse" if this 24-hour claim is permitted (Bailey Aff. ¶ 12).

**Claims Asserted By Plaintiff**

In her Motion, Plaintiff fails to distinguish her respective claims or classes sought, but she conflates her five claims into two asserted classes (one State and one Federal) set forth in her Proposed Order (attached to Plaintiff's Notice of Motion) ("P. Prop. Order").  Nor does she appear to distinguish between legal citations relevant to certification of State Rule 23 classes and FLSA collectives.[6]  Nevertheless, Plaintiff must meet her burden of proof for the propriety of each asserted class, as each respective claim must be separately addressed and satisfied on this motion, or the claim may not be certified.  See Jacob v. Duane Reade, 602 Fed. Appx. 3, 5 (2d Cir. 2015) (summary order).  Accordingly, we have segregated and addressed each of the following distinct class claims, that can be discerned from Plaintiff's motion papers and Proposed Order.

---

[6]   See e.g., Gjurovich v. Emmanuel's Mkt., 282 F.Supp.2d 101, 105 (S.D.N.Y. 2003) is cited and quoted extensively by Plaintiff, but refers to "this very preliminary stage in the litigation" which is a reference to conditional certification.  (P. Memo. pp. 5 and 8).

4

## ARGUMENT

### I.   THIS COURT SHOULD NOT CERTIFY A CLASS OF AIDES WHO WORKED LIVE-IN CASES CLAIMING THEY SHOULD HAVE ALWAYS BEEN PAID FOR 24 HOURS, RATHER THAN 13 HOURS

#### A.   The Premise For This Claim – That All Live-In Aides Are Automatically Entitled To 24-Hours Of Pay For Each Shift – Is Legally Incorrect

Plaintiff seeks to certify a class, under State law, of home aides who worked 24-hour live-in cases for Carelink between June 21, 2010 to date, on the claim that "Defendants illegally paid for 13 hours of the home health aide employee's 24 hour live-in shifts." (Rand Decl. ¶ 4; see also P. Memo. pp. 2-3, 7). This class would be distinct from other classes sought by Plaintiff because it would be entirely comprised of those who worked 24-hour "live-in" cases, who claim they were entitled to be paid for all 24 hours. This claim arises solely under State law, specifically, under a NY DOL regulation contained in the Miscellaneous Wage Order. See 12 NYCRR §§ 142-2.1(b). However, the NY DOL has long interpreted this regulation to mean exactly the opposite of Plaintiff's interpretation – i.e., to allow exclusion of up to 11 hours spent sleeping and eating from compensable hours and not to require 24 hours of pay, as Plaintiff claims. See NY DOL Counsel Opinion Letter RO-09-00169, dated March 11, 2010, pp. 4-5 (the "March 11, 2010 Opinion Letter") (App. 2 hereto), and earlier, similar Opinion Letters (discussed at p. 10, infra).[7]

This Court should not certify any such class claim, because the underlying legal premise of the class claim is faulty: Defendants were not obligated to automatically pay Plaintiff, or any class of aides, for 24 hours for all live-in shifts, contrary to Plaintiff's assertions, as explained below. (Further, if Plaintiff argues on reply for certification of a class of those live-in aides for whom, on some occasions, a particular meal or sleep period was interrupted, this type of claim

---

[7]   See also NY DOL Opinion Letter, Oct. 27, 1998 (App. 3 hereto), and NY DOL Opinion Letter, Oct. 20, 1992, regarding Request for Opinion, Home Care Workers Overtime Compensation (App. 4 hereto).

5

requires uniquely individualized and varying proof for each such instance and is plainly

inappropriate for class treatment.  See Section 1(F), infra.

> **B.** **Federal Courts Have Uniformly Rejected the Premise of Plaintiff's Class Claim**

No Federal Court has ever endorsed Plaintiff's position.  To the contrary, two Federal

Courts, in three separate discussions, have soundly rejected it.  For example, in Severin v. Project

OCR, Inc., 2012 WL 2357410, at *9-10 (S.D.N.Y. June 20, 2012), Judge Denise Cote squarely

rejected an identical claim and refused to certify a class of aides claiming that all live-in aides

were automatically entitled to 24 hours pay irrespective of whether they sleep 8 hours and take 3

hours for meals.  She explained as follows:

> The plaintiffs' NYLL minimum wage claims are premised upon a flawed reading of the
> NYLL's minimum wage provisions, one that does not consider the interpretive
> guidance in the DOL [March 11, 2010] Opinion Letter.  The plaintiffs have proceeded
> upon a theory that [Defendant] OHR's policy of paying home attendants 12 hours at
> their regular rate of pay plus a flat per diem violated NYLL, because home attendants
> are entitled to be paid at least the minimum wage for each of the shift's 24 hours.  With
> respect to their class allegations, the plaintiffs allege that every OHR home attendant
> who worked sleep-in shifts was underpaid in the same manner.  But the plaintiffs
> cannot argue that OHR's compensation policy for sleep-in home attendants violates the
> NYLL's minimum wage provision if the regulation is read in light of the DOL Opinion
> letter and its exclusion of hours was properly applied.
>
> Because the DOL Opinion Letter does govern interpretation of the NYLL's minimum
> wage provisions, the plaintiffs must show that OHR improperly excluded time from 24-
> hour sleep-in shifts to establish an NYLL minimum wage violation.  OHR asserts that it
> complied with its obligations under the NYLL's minimum wage provisions through a
> policy that sleep-in home attendants were entitled to at least eight hours of [unpaid] sleep
> time and at least five hours or continuous sleep during a 24-hour shift.

Id. at *9-10 (emphasis added).

The Eastern District of New York reached the same conclusion in each of two decisions

in Bonn-Whittingham v. Project Office for Homecare Referral, Inc., 2016 WL 7243541, at *5

(E.D.N.Y. Dec. 14, 2016).  There, Judge Allyne Ross likewise rejected the same class claim

urged here by Plaintiff, because it was based on the same erroneous assumption that live-in aides

were "necessarily" entitled to 24 hours of pay for each 24-hour shift:

> Under New York law, "live-in employees must be paid not less than for thirteen hours
> per twenty-four hour period provided that they are afforded at least eight hours of sleep
> and actually receive five hours of uninterrupted sleep, and that they are afforded three
> hours for meals." *N.Y. Dep't of Labor, Counsel Opinion Letter, RO-09-00169 Live-In
> Companions (March 11, 2010) [at p. 4]* [further citation omitted]. Therefore, defendants'
> policy of scheduling twenty-four hour shifts did <u>not</u> necessarily entitle plaintiffs to
> compensation for the full twenty-four hours.

<u>Id.</u> (emphasis added). The Court relied decisively on the NY DOL's long-standing interpretation

of its own regulation, which Plaintiff, and the State cases she relies upon, have discounted. <u>Id.</u>

Judge Ross underscored this conclusion even more pointedly, just a few months ago,

when rejecting Plaintiff's motion for reconsideration of the Court's earlier decision, in light of

<u>Tokhtaman</u> — the principal case relied upon by Plaintiff in his brief (P. Memo. at . 2-3). Judge

Ross squarely rejected Plaintiff's blanket claim for 24 hours pay on every live-in shift, and

rejected the line of cases relied upon by Plaintiff:

> "With respect to plaintiffs' NYLL claims "the [c]ourt is not bound by rulings of
> intermediate or lower state courts on an issue on which the highest court of the state has
> not spoken," <u>Commercial Union Ins. Co.</u>, 289 F.Supp. 2d at 341 (citing <u>Harem-
> Christensen Corp. v. M.S. Frigo Harmony</u>, 477 F.Supp. 694, 697 (S.D.N.Y. 1979).
> Plaintiffs admit that New York's highest court has not ruled on the relevant issue.

> "Further, [Federal] courts do "examine decisions of lower state courts to determine
> whether it is reasonable to assume that they present the current status of the state's law."
> <u>Commercial Union</u>, [supra] at 341 (citing <u>Kuwait Airways Corp. v. Ogden Allied
> Aviation Servs.</u>, 726 F.Supp. 1389, 1395 n.13 (E.D.N.Y. 1989).

> "I find that the New York Court of Appeals is not likely to follow <u>Tokhtaman</u>."

<u>Bonn Wittingham (II)</u>, 2017 WL 2178426, at *2 (E.D.N.Y. May 17, 2017).

In rejecting the automatic 24-hour argument advanced here, Judge Ross underscored that

the NY DOL's interpretation, <u>of its own regulation</u>, through <u>its own opinion letter</u>, "<u>is entitled to</u>

deference," and specifically found that the "NY DOL's reasoning is not irrational or

unreasonable," nor does it "conflict with the plain language of the promulgated [regulation]."

> "The [NY DOL Regulation] defines 'residential employee' only as one 'who live[s] on the premises of the employer.' 12 N.Y.C.R.R. 142-2.1(b)(1)-(2). It does not provide that such employees must live with the employer full time. It is not unreasonable to treat home health aides working 'live in' shifts as living part time with their clients, as the DOL Letter apparently does. See DOL [March 11, 2010] Letter at 4. Therefore, I find that Tokhtaman does not represent a change in controlling law."

Id. at *3 (emphasis added).

Put simply, this Court has never accepted as controlling law the flawed premise that

Plaintiff's proposed class rests exclusively upon.[8] This Court should reject it here. Since the

claim is not valid, no class can be certified presenting that claim.

### C.   NY DOL Amended The Regulation That Is The Premise For Plaintiff's Claim, With The Express Purpose Of Excluding This 24-Hour Claim

On October 6, 2017, the NY DOL clarified the regulation at issue here, by issuing

Emergency Rulemaking (the "Emergency Rule") (see Appendix 1 hereto). Most importantly, it

issued this clarification specifically in response to the Tohktaman and Andryeyeva Appellate

Division decisions, relied upon by Plaintiff here, with the stated purpose of excluding the very

claim for automatic entitlement to 24-hours pay that Plaintiff is now asserting. Specifically,

those Appellate Division cases held that a live-in aide is necessarily entitled under NY DOL

regulations (12 N.Y.C.R.R. 142-2.1(b)) to 24 hours pay for each 24-hour shift and rejected the

NY DOL's long-standing contrary interpretation of its own regulation.

The NY DOL's Emergency Rule clarified the meaning of the applicable regulation. The

NY DOL explained that this was necessary because the Appellate Division cases created alarm

---

[8]   In a fourth Federal case, the Eastern District of New York again recently followed this logic and rejected a class certification motion urging this identical claim; it instead issued an "Order terminating the Motion to Certify…without prejudice, pending the New York Court of Appeals Decision in Tokhtaman …" See Nasimova v. Attentive Home Care Agency, et al., 1:16 cv 01005(SJ)(PK), August 17, 2017 Dkt. Entry (Johnson, J.)(attached as Appendix 8 hereto).

and havoc in the home care industry by overriding the guidance of both the NY DOL and the NY

DOH, which the home care industry had relied upon for at least 25 years.  As noted above, a

series of NY DOL rulings and opinion letters dating back to 1992 have held that the employer

may compensate the live-in aide for only 13 hours in a 24-hour shift, if the aide is provided with

3 hours of meal time and 8 hours of sleep (5 of which are uninterrupted).[9]

Accordingly, on October 6, 2017, the NY DOL issued its Emergency Rule to address and

resolve this vital issue (incorporated in App. 1).  NY DOL stated that, if left uncorrected, the

erroneous interpretation by State courts "threatened the continued operation of this industry."

According to NY DOL's "[s]pecific reasons underlying the finding of necessity" accompanying

the Emergency Rule published in the N.Y. State Register on October 25, 2017 (App. 1).

> "**Specific reasons underlying the finding of necessity:** This <u>emergency
> regulation is needed to preserve the status quo, prevent the collapse of the home
> care industry,</u> and avoid institutionalizing patients who would be cared for at
> home, in the face of recent decisions by the State Appellate Divisions that treat
> meal periods and sleep time by home care aides who work shifts of 24-hours or
> more as hours worked for purposes of state (but not federal) minimum wage.  As
> a result of those decisions, home care agencies may cease to provide home care
> aides thereby threatening the continued operation of this industry that employs
> and serves thousands of New Yorkers by providing vital, lifesaving services and
> averting the institutionalization of those who could otherwise be cared for at
> home.  <u>Because those decisions relied upon the Commissioner's regulation, and
> rejected the Department's opinion letters as inconsistent with that regulation, this
> emergency adoption amends the relevant regulations to codify the
> Commissioner's longstanding and consistent interpretations that such meal period
> and sleep times do not constitute hours worked for purposes of minimum wage
> and overtime requirements.</u>"

See id. (emphasis by underscores added).

Nothing in New York (or, for that matter, Federal) law provides a basis for Plaintiff's

claim for automatic payment of 24 hours in live-in cases.  Plaintiff's sole purported basis for this

---

[9]   See NY DOL Opinion Letter, March 11, 2010 (App. 2 hereto):  NY DOL Opinion Letter, Oct. 27, 1998 (App. 3
hereto); and NY DOL Opinion Letter, Oct. 20, 1992 (App. 4 hereto).  <u>NYS Register, Rule Making Activities, Dep't.
of Labor, Home Care Aide Hours Worked,</u> (Oct. 25, 2017) (emphasis added).

asserted State-law claim is the NY DOL regulation, but the NY DOL has long interpreted this regulation to mean exactly the opposite of Plaintiff's claim.  To underscore this point, NY DOL's Emergency Rule has now specifically reiterated and codified its interpretation.

The March 11, 2010 NY DOL Opinion Letter (App. 2 hereto) plainly interprets that Regulation to permit exclusion of up to 3 hours of bona fide meal times and 8 hours of bona fide sleep time, when 5 hours are uninterrupted, just as Defendants have done here.  As noted, that regulatory interpretation goes back 25 years.  In 1998, the NY DOL issued a substantially identical interpretation, after citing and quoting the same Regulation N.Y.C.R.R. § 142-2.1(b), making clear that its interpretation applies to "live-in" home aides like Plaintiff:

> "With regard to 'live-in' home health aides: (including those workers employed on-site for 24-hour shifts), it is the policy of the Department of Labor that such persons must be paid for no less than 13 hours of each 24-hour day they are required to remain 'on call' in the home of the person receiving their services – provided that they are afforded eight hours for sleep and actually receive five hours of uninterrupted sleep and that they are afforded three hours for meals.  If a 'live-in' home health aide does not receive five hours of uninterrupted sleep, the eight hour sleep period exclusion is not applicable, and the home health aide must be paid for all eight hours in question.  Similarly, if a 'live-in' home health aide is not actually afforded three work-free hours for meals, the three-hour meal period exclusion is not applicable."

(NY DOL Opinion Letter, Oct. 27, 1998) (emphasis added) (App. 3 hereto).

Even before that, the NY DOL had issued another consistent ruling in 1992, also expressly referring to live-in companions, which stated:

> "Time actually spent sleeping and time actually spent eating (provided the worker was entirely free of responsibilities for the client while eating) would not be considered working time."

(NY DOL Opinion Letter, Oct. 20, 1992) (emphasis added) (App. 4 hereto).

The Emergency Rule does not alter these precedents; nor does it even amend the pre-existing text of the underlying regulation at all.  Rather, it is designed specifically to reiterate and "codify" the "[NY DOL] Commissioner's longstanding and consistent interpretations" that

10

exclude bona fide meal and sleep period from compensable time, contrary to the holdings of

Tokhtaman and Andryeyeva. (NYS Register, Rule Making Activities, supra, (Statement of

Reasoning) (Oct. 25, 2017) (App. 1 hereto)) (emphasis added). For this reason, it simply adds

the following clarifying sentence to avoid the misconstruction of its regulation:

> "Notwithstanding the above, this subdivision shall not be construed to require that
> the minimum wage be paid for meal periods and sleep times that are excluded
> from hours worked under the Fair Labor Standards Act of 1938, as amended, in
> accordance with sections 785.19 and 785.22 of 29 C.F.R. for a home care aide
> who works a shift of 24 hours or more."

See 12 N.Y.C.R.R. § 142-2.1(b), as amended (emphasis added) (App. 1 hereto).

Clearly, the Emergency Rule is specifically directed at – and designed to clarify – NY

DOL's regulations in order to exclude the very same type of claim that Plaintiffs are asserting

here, that have threatened the viability of the entire home care industry. Id. The Emergency

Rule should be given its intended effect. It reiterates the NY DOL's longstanding and consistent

interpretation of the Regulation at issue; and it sharply distinguishes the Tokhtaman and

Andryeyeva line of cases that did not have the Emergency Rule before them, and that failed to

accord NY DOL's interpretation the deference it deserves, but which Federal courts have

consistently given.

**D.     NY DOL's Interpretation Is Consistent With Federal Law**

Adding further gravitas to the NY DOL's interpretation of its own regulation is the fact

that its construction is entirely consistent with Federal law. Indeed, the Emergency Rule cites

the similarly applicable federal standards (29 CFR §§ 785.19, 785.22), and expressly clarifies

that both Federal and State schemes are intended to be construed consistently "for a home care

aide who works a shift of 24 hours or more." 12 N.Y.C.R.R. § 142-2.1(b), as amended (App. 1

hereto).

The "Regulatory Impact Statement for the Emergency Rule" (see App. 1 hereto) further notes that the construction codified in the Emergency Rule is entirely consistent with other long-standing sections 142-2.2 and 142-3.2 of the Miscellaneous Wage Order which, since 1986, call for the State law to be construed in a manner consistent with Federal law:

> "[T]he Commissioner did … amend [its Miscellaneous Wage Order] in 1986 to provide for overtime to be calculated "in the manner and methods provided for in and subject to the exemptions of" the federal Fair Labor Standards Act (FLSA)(12 NYCRR §§ 142-2.2 and 142-3.2) and, in so doing, grew to increasingly look to, and rely upon, federal FLSA regulations interpreting hours worked (29 CFR Part 785) to address meal periods (29 CFR §§ 785.18-19) and sleeping time (29 CFR 785.20-23) so that hours worked were calculated consistently at the state and federal level for overtime (and other) purposes."

NYS Register, Rule Making Activities (Regulatory Impact Statement) (Oct. 25, 2017)(App 1).

This consistency with Federal law provides yet another reason for this Court to defer to the NY DOL's interpretation, as this Court explained in Severin, supra:

> "The [March 11, 2010] DOL Opinion Letter's interpretation of New York's minimum wage regulation in the context of employees working 24 hour shifts appears to draw upon a federal regulation. *See* 29 C.F.R. § 785.22 … It is not irrational or unreasonable for the DOL to conform the New York regulations with federal regulations and minimize New York employers' administrative burden in complying with two regimes."

Severin, supra, 2012 WL 2357410, at *9 n.6 (S.D.N.Y. June 20, 2012).

Defendant has complied with the Federal regulations by training its home health aides in its initial orientations and in its twice-annually-required "in-service" training, that it will pay aides for 13 hours on 24-hour live-in cases unless the aides' sleep or meals are interrupted in a time or manner that triggers additional compensation.  (Bailey Aff., ¶ 15).  Thus, Plaintiff has no claim under either Federal or State law, which are to be similarly construed.

**E.     NY DOL's Interpretation Is *In Pari Materia* With Those Of NY DOH On The Same Subject**

The NY DOH's regulations provide further support for the NY DOL's interpretation of its regulations, under the doctrine of *in pari materia*.  Compare 18 N.Y.C.R.R. §505.14(a)(4), with the March 11, 2010 Opinion Letter and 12 N.Y.C.R.R. § 142-2.1(b).  "Statutes which relate to the same or to cognate subjects are *in pari materia* and are to be construed together unless a contrary intent is clearly expressed by the Legislature."  Reiber v. GMAC, LLC, 547 F.3d 177, 186 (2d. Cir. 2008).

In the home care industry, live-in care may only be provided – and paid for through Medicaid – when authorized under NY DOH's regulations.  That regulation specifically defines when such designation is permitted:

> "[L]ive-in 24-hour personal care services means the provision of care by one personal care aide for a patient . . . whose need for assistance is sufficiently infrequent that a live-in 24-hour personal care aide would be likely to obtain, on a regular basis, five hours daily of uninterrupted sleep during the aide's eight hour period of sleep."

18 NYCRR § 505.14(a)(4) (emphasis added).  Thus, *in pari materia* dictates that NY DOL's policy and the NY DOH's regulations be construed together.  Absent such a joint construction, the NY DOH's regulation ceases to have any meaning.

Both regulations are premised on very specific parameters of the medical condition of patients who are eligible for live-in care:  they must be patients "whose need for assistance is sufficiently infrequent," such that the aide is "likely to obtain, on a regular basis, 8 hours of sleep, 5 of which are uninterrupted."  Id.  This makes sense.  NY DOH authorizes live-in care only those patients who will not require round-the-clock care, but will "regularly" sleep through the night.  NY DOL, *in pari materia*, makes clear that the aide need to be "available for work" and should not anticipate payment during such regularly expected sleep patterns, unless an

13

unusual interruption occurs.  It is clear that both agencies coordinated their respective expertise to determine how best to address the working time expectations of live-in aides in home care, with reference to the actual needs of the patients they serve.

It is not surprising, then, that under NY DOH's rules, Medicaid and other payors will only reimburse LHCSAs like Carelink for 13 hours of services, in these 24-hour live-in cases, based on the <u>medical</u> <u>expectation</u> of the number of hours the aide will actually have to be "available" for work.[10]  Plaintiff's claim for automatic payment of all 24 hours demands compensation that is not provided by NY DOH's own reimbursement scheme (Bailey Aff., ¶ 13).

For that reason, NY DOH <u>endorsed</u> NY DOL's policy excluding 11 hours in a 24-hour live-in shift, and advised the home care industry <u>to pay in accordance with NY DOL's existing guidance</u> providing for 13 hours of pay, absent interruption.  This advice was contained in its Nov. 24, 2014 Policy titled "Paying for Live-In 24-Hour Care For Personal Care Services and Consumer Directed Services" ("Rule 14.08"):

> "Effective immediately, MLTCP's and their network providers are required to provide a rate of payment that is based on at least 13 hours of care.  The payment of live-in cases under this policy will be retroactive to April 1, 2014."

Nov. 24, 2014 NY DOH Policy attached as App. 5 hereto.

The NY DOH even weighed in after the issuance of the <u>Tokhtaman</u> decision, specifically to reject that decision and again reinforce that it <u>continued</u> to endorse the existing 13-hour reimbursement system under its Rule 14.08 payment policy (quoted above), explaining that it would <u>not</u> convert live-in cases to "24-hour continuous split-shift care" (<u>i.e.</u>, convert live-in cases into the type of case where aides are paid for <u>all</u> 24 hours, normally in two contiguous 12-hour

---

[10]   NY DOH has deliberately reinforced this point several times.  In an October 3, 2012 letter issued (under Court Order), NY DOH's office of Health Insurance Programs specified that "the intent of [Section 505.14] is to <u>allow the identification of situations in which</u> a [patient's] needs <u>can be met by a live-in aide</u> and still allow the aide to have an uninterrupted 5 hours for sleeping."  (App. 6 hereto)

shifts) <u>unless</u> the <u>medical</u> "criteria for this higher level of care" is met.  DOH Advice, Services for Live In Home Care, July 14, 2017 (attached as App. 7 hereto).

In summary, this shows that <u>both</u> the NY DOL and NY DOH have coordinated their interpretations of their regulations *in pari materia*, to provide for the same level of anticipated hours of work, and anticipated reimbursement of services, in the category of cases deemed medically appropriate for live-in 24-hour care.  We respectfully urge this Court to defer to the special knowledge and expertise of both agencies in their coordinated determinations.

### F.     Plaintiff's Alternative Claim That Some Aides Had Uncompensated Sleep or Meal Interruptions Does Not Meet The Standards For Class Treatment

Plaintiff has specifically asserted a claim for "full pay" for each 24-hour live-in shift (P Memo. at bot. p. 2), rather than some lesser claim.  However, because Plaintiff's papers lack specificity, we believe she may now try to argue, in the alternative, that she also seeks a class of all 24-hour live-ins who, on various particular dates or instances, allegedly had sleep or meal interruptions whom he claims were not compensated for those asserted time periods.

No such alternative class should be permitted here, because by its nature, this alternative class of live-ins would be asserting particularized claims which rest entirely on individual, fact-specific inquiries that are not properly subject to class treatment.  Indeed, courts have previously rejected this very claim on the grounds that individual questions would predominate over common ones:

> "Individual plaintiffs may still establish an NYLL violation by showing that they did not <u>in fact</u> receive eight hours of sleep time or five hours of continuous sleep while working sleep-in shifts.  But that is a different theory of liability than the one heretofore pursued by the plaintiffs, and they have not demonstrated that it is susceptible to class wide resolution.  <u>Whether or not a home attendant actually received eight hours of sleep time and five hours of continuous sleep is an inherently fact-specific inquiry that is likely to hinge heavily on the characteristics of particular clients to whom sleep-in home attendants were assigned.</u>"

<u>Severin</u>, 2012 WL 2357410, at *10 (emphasis added).

Plaintiff herself concedes that the number and instances of sleep or meal interruption she experienced varied, from day to day, and from patient to patient.  Plaintiff testified that she worked exclusively as a live-in for approximately 30 patients during her tenure of almost 3 years with Carelink (Downie Dep. 107-08).[11]  She was examined as to sleep and meal interruptions with each of them (Id. 108-150).  Her testimony as to the frequency, durations, and timing of such interruptions demonstrates that this is a heavily fact-specific inquiry, individual to each patient and each day, Plaintiff testified that there were "some instances" when she was unable to sleep through the night and that there were "some instances" when her meals were interrupted (Downie Dep. at 142, 124, 121, 112):

> Q.    Do you recall whether you were able to sleep through the night with the patient [C.H.]?
>
> A.    Sometimes.  (Downie Dep. 136)
>
> \*   \*   \*
>
> Q.    Okay.  And is it your testimony that you were unable to sleep through the night with that patient [V.S.]?
>
> A.    Sometimes (Downie Dep. 121).
>
> \*   \*   \*
>
> Q.    Do you recall what time of day you were awakened [by patient I.J.]?
>
> A.    No.
>
> Q.    Do you recall how frequently you were awakened?
>
> A.    Not frequently, no-no, no.  (Downie Dep. 135)

She conceded that these events "vary from night to night" (Id. 128).  As to most patients (including her last patient while working for Carelink, with whom she most recently worked for 5 consecutive months) (id, 142), she simply could not remember whether or not she was able to sleep through the night or take her meals (id. at 143)(see also, id, at 99-100, 101, 109-10, 116, 121, 124-25, 131-32, 135, 137, 139, 140-41, 142, 144-46, 147-48:  no recollection).  Clearly, she

---

[11]    Deposition extracts are separately provided in an accompanying appendix of Deposition Extracts.

was unable to testify that either sleep or meal interruption occurred uniformly.  She also repeatedly testified that she never complained or brought this to Carelink's attention (id. at 102, 111, 120, 124, 125, 127-28, 129-30, 137-38).  (See also Bailey Aff. ¶ 16).

Thus, Plaintiff's own testimony demonstrates that individualized issues would necessarily predominate on any claim asserting sporadic failure to compensate for sleep or meal interruptions:  How often and on what dates did this interruptions occur?  For what duration? Did they deprive her of five hours of uninterrupted sleep or not?  Did Carelink have any way to know of these interruptions?   (See also Bailey Aff. ¶ 16).

Judge Cote in the Severin case held that similar individualized issues would predominate and overwhelm the inquiry, and thus the claim was not appropriate for class treatment:

> "[Plaintiffs] have both testified that on numerous occasions while working sleep-in shifts they were unable to sleep through the night, because they were constantly forced to attend to clients' physical and mental impairments.  Resolving the plaintiffs' minimum wage claims will require, at a minimum, establishing the truth or falsity of a plaintiff's sleep deprivation contentions, the frequency with which the issue arose for a plaintiff, whether the plaintiff reported the problem to OHR, and OHR's response.  Answering these questions is unlikely to 'generate common answers apt to drive the resolution of' class litigation, or 'resolve . . . issue[s] that [are] central to the validity of each one of the [class] claims in one stroke.'  Wal-Mart, 131 S. Ct. at 2551.  Because the plaintiffs have failed to show that common questions of law or fact predominate over individual ones as to their NYLL minimum wage claim, class certification of this claim must be denied as well."

Severin, 2012 WL 2357410, at *10.  This Court should reach the same conclusion here.

In addition to predominance, Plaintiff has failed to demonstrate commonality for such a class.  She has not offered sufficient evidence to show that any other home health aides did not receive sufficient sleep or meal break time.

## II.   NO CLASS SHOULD BE CERTIFIED FOR PLAINTIFF'S FLSA CLAIM

Plaintiff seeks to certify a collective of home health aides for the period from January 1, 2015 through October 14, 2015 for an overtime claim.[12]  She alleges that these health aides were paid time and one half the New York minimum wage instead of time and one half their regular rate.  Because discovery will be complete before this motion is fully briefed, the court must decide on the full factual record on the motion whether there are – in fact – similarly situated employees in order to certify a FLSA collective.  See Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010) ("At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs."); see also Moore v. Publicis Groupe SA, 2012 WL 2574742, at *9 (S.D.N.Y. June 29, 2012) ("The second step is applied after discovery is complete.").

The FLSA's overtime requirements do not apply to "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves . . ." 29 U.S.C. § 213(a)(15).[13]  In 1975, the United States Department of Labor ("U.S.D.O.L.") originally adopted its "companionship exemption" regulation, that provided as follows:

> "[T]he term companionship services shall mean those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs.  Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and similar services.  They may also include the performance of general household work:  Provided,

---

[12]   Plaintiff's proposed order referenced October 14, 2017 as an end-date for this collective.  However, Plaintiff herself submits proof that Carelink started paying overtime as time and a half the regular rate on October 15, 2015 (see Rand Decl. ¶ 3), so this appears to be a typographical error.

[13]   These requirements are incorporated by the NYLL's regulations.  See 12 N.Y.C.R.R. § 142.2.2.

however, that such work is incidental, i.e., does not exceed 20 percent of the total
weekly hours worked."

29 C.F.R. § 552.6 (1975). It is undisputed that Carelink's aides were exempt from the FLSA's

overtime requirements under this regulation, as it then existed.

In October 2013, the U.S.D.O.L. issued a new interpretative regulation that refined the

term "companionship services." *See* 29 C.F.R. § 522.6 (2015). This regulation was scheduled to

take effect on January 1, 2015. However, the District of Columbia vacated this regulation before

it took effect. See Home Care Ass'n of Am. v. Weil, 76 F. Supp. 3d 138, 140 (D.D.C. 2014);

Home Care Ass'n of Am. v. Weil, 78 F. Supp. 3d 123 (D.D.C. 2015). Thus, on January 1, 2015,

this regulation did not take effect.

Subsequently, the Court of Appeals for the District of Columbia vacated the lower court's

vacatur order. Home Care Ass'n of Am. v. Weil, 799 F.3d 1084, 1087 (D.C. Cir. 2015). The

Court of Appeals issued its mandate on October 13, 2015.

The U.S.D.O.L. released an announcement regarding the Court of Appeals decision,

explaining as follows:

> "Because of the district court orders, the Department could not begin enforcement
> of the Final Rule on January 1, 2015, and because the Court of Appeals opinion
> did not take effect immediately, it could not begin enforcement on August 21,
> 2015, either. . . . The Court of Appeals opinion reversing the district court's
> orders became effective on October 13, 2015, when the Court of Appeals issued
> its mandate. The Department did not begin enforcement of the Final Rule until 30
> days after that date, which means November 12, 2015."

U.S.D.O.L. release, "U.S. Court of Appeals Unanimously Upheld DOL Rule, Opinion Effective

as of Oct. 13, 2015," (available online at https:/www.dol.gov/whd/homecare/litigation.htm)

(emphasis added) (see App. 9 hereto). The U.S.D.O.L. also issued formal guidance, stating that

"it would not institute enforcement proceedings for violations of the new rules until 30 days after

the mandate in the Court of Appeals' case issued" and that "it will not bring enforcement actions

19

for violations of the rule prior to November 12, 2015." See Bangoy v. Total Homecare

Solutions, LLC, 2015 WL 72674747 (S.D. Oh. Dec. 21, 2015) (citing 80 Fed. Reg. 55029 (Sept.

14, 2015) (App. 12) and 80 Fed. Reg. 65646 (Oct. 27, 2015) (App. 13)).

      Plaintiff argues that the Court of Appeal's decision, which became effective on October

13, 2015, means that the new regulation should be retroactive and effective starting on January 1,

2015.  However, this ignores all of the guidance from the U.S.D.O.L.  As the agency responsible

for creating and enforcing this regulation, it is in the best position to determine whether or not

this regulation should be retroactively applied back to January 1, 2015.  The U.S.D.O.L.

repeatedly emphasized in its public statements that the Court of Appeals' decision reinstating the

new regulation was "effective" on October 13th, and then added a 30-day grace period.  Indeed,

its position makes sense, given that on January 1, 2015, the new regulation did not actually take

effect, because of the district court's decision in Weil.

      Here, Plaintiff seeks to penalize Carelink under Federal Law for relying in good faith on

the U.S.D.O.L.'s guidance on its own regulation (see Bailey Aff., ¶ 18).  This should not be

permitted, and this regulation should be enforced starting on October 13, 2015, at the earliest.

See Alves v. Affiliated Home Care of Putnam, Inc., 2017 WL 511836, at *3 (S.D.N.Y. Feb. 7,

2017) (holding that the regulation "became effective on October 13, 2015)".  As one district

court recently explained:

> "[The employer, THS,] was entitled to rely on [the district court's] decision in not
> paying Plaintiffs overtime for the interim period now at issue in this case.  Any
> other conclusion would put THS, and other similarly-situated employers, in an
> untenable position.  THS could have complied with the vacated rule at the risk of
> paying Plaintiffs overtime wages to which they were not entitled if the Court of
> Appeals affirmed the district court's judgment.  Or, THS could have done what it
> did here, rely on the vacatur of the rule but then, according to Plaintiffs, be liable
> to them for FLSA damages if the Court of Appeals reversed the district court's
> judgment."

See Bangoy, 2015 2015 WL 12672727, at *3.  While some courts have a reached a contrary conclusion, those courts have relied on authority regarding the retroactivity of appellate court decisions.  See, e.g., Kinkead v. Humana, Inc., 206 F. Supp. 3d 751 (D. Conn. July 19, 2016).  However, that analysis does not take into account (1) the U.S.D.O.L.'s repeated guidance about an "effective date" of October 13, 2015 and (2) the fact that the new regulation never took effect on January 1, 2015.  See MCI Telecom. Corp. v. GTE Northwest, Inc., 41 F. Supp. 2d 1157, 1162-63 (D. Or. March 17, 1999) (declining to retroactively apply reinstated FCC regulations based on an appellate decision).

Since the new regulation should not be retroactively applied to January 1, 2015, the original 1975 regulation should govern that period.  Plaintiff alleges that she was not exempt under that regulation because she "spent at least 30% of my time directly doing household work."  (See Downie Decl. ¶ 25).  However, she does not provide any evidence regarding other putative class members' household work and has failed to demonstrate that there were similarly situated employees.

> "[T]he question of whether an individual . . . home attendant is subject to the FLSA companionship services exemption is not susceptible to generalized, classwide proof.  Rather, the applicability of the exemption to a particular home attendant is an individualized, fact-specific determination of whether . . . the home attendant performed general household work 'more than 20 percent of the time, and of course any work, household work, that is related to the fellowship, care or protection of their client wouldn't negate the exemption.'"

Severin v. Project OHR, Inc., 2012 WL 2357410, at *6 (S.D.N.Y. June 20, 2012) (holding that the FLSA and NYLL overtime claims were not appropriate for certification).

Further, she testified that her household work was part of, and related to the <u>care</u> of her patients, who could not care for their own homes (Downie Dep. 64-69). Under the 1975 version of the regulation, household work "related to" the care provided by the Aide is <u>allowed</u>.[14]

### A.     The 2-Year Limitations Period For Non-Willful FLSA Actions Has Run

The FLSA statute of limitations permits actions to "be commenced within two years after the cause of action accrued, . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255. Here, Plaintiff has completely failed to offer any evidence of willfulness, and Plaintiff cannot prove willfulness based on Carelink's good faith failure to predict the future (and the Court of Appeals decision in <u>Weil</u>) (<u>see</u> Bailey Aff., ¶ 18). Thus, the two-year statute of limitations applies in this action. Since it is undisputed that Carelink has complied with the revised FLSA regulations since October 15, 2015 (<u>see</u> Rand Decl. ¶ 3), the FLSA claims of any putative collective members are time-barred, as more than two years have passed since that time.

### B.     In The Absence Of The FLSA Claim, This Court Should Decline Jurisdiction Over The State Law Claims

Plaintiff does not allege any other federal claims in this action. Carelink respectfully requests that this Court decline to exercise supplemental jurisdiction over any state law claims, to the extent it believes that any of those claims should proceed on a class basis. <u>See</u> 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the claim substantially predominates over the claim or claims over which the district court has original jurisdiction.").

---

[14]   The 1975 regulation, quoted on pp. 18-19 above, allows <u>unlimited</u> "household work <u>related to</u> the care or infirm person." (emphasis added)

### III.   NO CLASS SHOULD BE CERTIFIED ALLEGING "SPREAD OF HOURS" CLAIMS BECAUSE PLAINTIFF WAS PAID MORE THAN MINIMUM WAGE, AND BECAUSE SHE HAS NOT MET THE STANDARDS FOR CLASS CERTIFICATION

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must <u>affirmatively</u> demonstrate his compliance with the Rule – that is, he must be prepared to <u>prove</u> that there are in fact . . . common questions of law or fact, etc."  <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 350 (2011) (emphasis added).  As the Supreme Court recently explained:

> "[The commonality standard] is easy to misread, since [a]ny competently crafted class complaint literally raises common questions. . . .  Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury.  This does not mean merely that they have all suffered a violation of the same provision of law. . . .  Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury . . . gives no cause to believe that all their claims can productively be litigated at once.  Their claims must depend upon a common contention . . .  That common contention, moreover, must be of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

<u>Wal-Mart</u>, <u>supra</u>, 564 U.S. at 349-50 (2011) (internal citations omitted).

Following this mandate, this Court declined, in a recent case, to certify a State-law spread-of-hours class for the time period after June 25, 2009, because the plaintiffs had not met this standard.  <em>See</em> <u>Lin v. Benihana N.Y. Corp.</u>, 2012 WL 7620734, at *5-6 (S.D.N.Y. Oct. 23, 2012), <u>adopted by</u> 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013).  For that time period, the plaintiffs offered 10 declarations stating as follows: "During my employment for Defendants, I was not properly paid a spread of hour wage when my work day exceeded ten hours until January 2011.  I personally observed that other employees of Defendants similarly were not properly paid their spread of hours wage."  <u>See</u> <u>id</u>. at *5.  The plaintiffs also offered statistical evidence regarding two employees' spread-of-hours pay.  The court ruled that the plaintiffs

failed to meet their burden to provide "the 'quantum of evidence' necessary to demonstrate 'a company-wide policy or practice'" on their spread-of-hours claim.  See id. at *6.[15]

Here, Plaintiff has provided profoundly less evidence to support her request for certification of a spread-of-hours class, and she clearly has not met her burden under Rule 23.  In her declaration, Plaintiff offers only a single conclusory statement regarding her spread of hours claim: "During the time period, I . . . was not paid an extra hour of pay for my hours worked over a spread of 10 hours per day."  (See Downie Decl. ¶ 3).  Despite the fact that the parties have nearly completed discovery, Plaintiff provides no evidence about whether or not any other employees worked a spread of hours over 10 hours per day or whether any other employees received spread-of-hours pay.  This is plainly insufficient to establish a common company-wide policy, or that common questions will predominate.

Plaintiff's counsel also submitted a declaration claiming – without any explanation – that "[t]he pay statements attached indicate that Defendant had a policy not to pay spread of hours wages."  (See Rand Decl. ¶ 14).  As an initial matter, pay records – without time records – do not show whether an individual worked a spread of hours in excess of 10 hours, and thus, cannot demonstrate a common policy regarding spread of hours pay.[16]

What these payroll records do show, however, is that the employees were paid at a rate well over minimum wage, and thus, were not entitled to spread of hours pay as a matter of law. (See also, Bailey Aff. ¶ 17).  See Lin, supra, 2012 WL 7620734, at *5 (limiting spread-of-hours class to minimum wage employees only).  As the New York Department of Labor has explained,

_____

[15]   The Lin court certified a class for an earlier time period (prior to June 25, 2009) because the plaintiff provided additional evidence for that time period.  Here, Plaintiff has failed to meet her burden for the entire proposed class period, and thus, class certification on this claim should be denied.

[16]   The only time records attached to the Rand Declaration are for Plaintiff Downie.  However, Plaintiff Downie's records are insufficient to prove commonality for "thousands of home health aide employees." (P. Memo. at 13: Plaintiff's description of the size of the putative class).

24

"[i]t is important to note that the 'spread of hours' regulation does not require all employees to be paid for an additional hour . . ."  *See* N.Y.S. Dep't of Labor Aug. 26, 2009 Opinion Letter 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; and Aug. 7, 2006 Opinion Letter, File No. RO-06-0037 (emphasis added) (App. 10 hereto).  "The majority of district courts in this circuit are in accord with the New York Department of Labor's position that those earning more than the minimum wage are not entitled to spread-of-hours pay."  Rui Xiang Huang v. J&A Entm't Inc., 2012 WL 6863918, at *8 (E.D.N.Y. Dec. 3, 2012) (holding than an employer "would be entitled to summary judgment on this claim if the plaintiff's workday (including time spent off-duty) totaled less than ten hours a day, or if the plaintiff was paid above the minimum wage"); see also Lora v. To-Rise, LLC, 2017 U.S. Dist. LEXIS 112644, at *9 n.2 (E.D.N.Y. July 18, 2017) (unreported in Westlaw) ("This 'spread of hours' requirement only applies to employees who earn minimum wage."); Shu Qin Xu v. Wai Mei Ho, 111 F. Supp. 3d 274, 281 (E.D.N.Y. 2015) ("Courts in New York have found that the spread of hours pay requirement only applies to those employees making minimum wage and not to those making more than minimum wage.").

This Court has previously adopted this same approach, and should do so here.  See, e.g., Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 369 (S.D.N.Y. Aug. 16, 2012) (Oetken, J.) ("New York's spread-of-hours law does not apply to plaintiffs who earned substantially more than the minimum wage.").  Here, Plaintiff's wages always exceeded the applicable minimum wage by at least $1 per hour ($13 per live-in shift) and thus more than exceed an additional hour of minimum wage payment (Bailey Aff. ¶ 17)

## IV.   NO WAGE-THEFT PREVENTION ACT CLASS SHOULD BE CERTIFIED

Plaintiff has failed to demonstrate typicality on her State-law Wage Theft Prevention Act ("WTPA") notice claim for one simple reason – she admits that she received a WTPA notice

when she started working at Carelink.  (See Downie Decl. ¶ 33; see also Am. Compl. ¶¶ 57-58).

Accordingly, Plaintiff does not have a valid WTPA claim.

The WTPA requires employers to provide wage notices to employees around "the time of hiring" and, in certain circumstances, upon changes to the information in the original wage notice.  See N.Y. Lab. Law § 195(1)(a), (2).[17]  However, the WTPA creates only a limited private right of action – employees may assert a wage notice claim only when they were not provided a wage notice around the beginning of their employment.  See N.Y. Lab. Law § 198(1-b); see also Lin, supra, 2012 WL 7620734, at *8 (S.D.N.Y. Oct. 23, 2012) ("The plain language of the statute . . . confers a private right of action upon those who do not receive their notice at the time of hiring, but not upon those who do not receive it on or before February first of any subsequent year. . . .  Therefore, only employees who did not receive a proper wage and hour notice at the time of hiring can sue . . .").[18]

Thus, employees do not have a private right of action if the employer does not provide them with annual notices or notices upon changes.  See, e.g., Hinckley v. Seagate Hospitality Grp., LLP, 2016 WL 6524314, at *2 (W.D.N.Y. Nov. 3, 2016) (granting motion to dismiss the plaintiffs' claim that the defendant failed to provide annual WTPA notices because "the NYLL does not provide a private right of action where an employer fails to provide annual notices; rather, it only provides such a private right of action where the employer fails to provide the notice at the time of hire"); Guaman v. Krill Contr. Inc., 2015 WL 3620364, at *8 (E.D.N.Y. June 9, 2015), adopted by 2015 WL 3620364 (E.D.N.Y. June 9, 2015) (holding that the WTPA

---

[17]   The WTPA also originally required an employer to provide a wage notice on or before February first of each subsequent year of the employee's employment, but this requirement was subsequently eliminated through legislation enacted on December 29, 2014.  See 2014 N.Y. Laws 537.

[18]   In contrast, the WTPA permits the NY DOL Commissioner to bring a broader set of claims on behalf of employees.  See N.Y. Lab. Law § 198(1-b) (permitting the Commissioner to bring claims "[o]n behalf of any employee not provided a notice as required by subdivision one of section one hundred ninety-five of this article . . .").

"does not extend this private right of action to employees who do not receive subsequent notices on or before February first" and declining to impose damages against defaulting employer on WTPA notice claim where the plaintiff's employment commenced before April 9, 2011); Carter v. Tuttnauer USA Co., 78 F. Supp. 3d 564, 569-70 (E.D.N.Y. Jan. 12, 2015) (holding: no private right of action for failure to provide annual notice); Reyes v. Sofia Fabulous Pizza Corp., 2014 U.S. Dist. LEXIS 188734, at *21 (S.D.N.Y. Apr. 7, 2014) (unreported in Westlaw), adopted by 2014 WL 1744254 (S.D.N.Y. Apr. 24, 2014) ("There is no private right of action under the WTPA for damages based on an employer's failure to provide subsequent annual notices.").[19]

Plaintiff admits she received a notice when she started working for Carelink, so she does not have a valid WTPA claim.  Thus, her claim is not typical with respect to any putative class members who allegedly did not receive a WTPA notice when they started their employment at Carelink (if such individuals exist).  See Lin, supra, 2012 WL 7620734, at *5 (denying class certification on WTPA notice claim because named plaintiffs did not have valid claim).

Plaintiff has also failed to prove commonality or predominance on her WTPA claims. On the WTPA notice claim, Plaintiff makes a single statement about whether or not other employees received WTPA notices, which is as follows:  "Upon information and belief the other home health aide employees also were not given such notice."  (Downie Decl. ¶ 33 (emphasis added)).  However, allegations made on information and belief are entitled to no weight on a certification motion.  See Silva v. Calle 8, L.L.C., 2013 WL 6330848, at *4 (E.D.N.Y. Dec. 5, 2013) ("Affidavits containing class allegations that are not made on personal knowledge, but instead based on information or belief are not sufficient to make the required factual showing of a common plan or policy." (quotation marks and alterations omitted)).

---

[19]   But cf. Cuzco v. F&J Steaks 37th Street, LLC, 2014 WL 2210615, at *4 (S.D.N.Y. May 28, 2014) (expressing minority view that employees may assert a claim if they did not receive a wage notice when their wage rate changed after April 9, 2011).

With respect to the related "wage statement" claim, Plaintiff attaches several wage statements to her declaration, effectively admitting that Carelink did – in fact – furnish her with a wage statement, as required by the WTPA.  *See* N.Y. Labor Law § 195(3) (requiring employers to "furnish each employee with a statement with every payment of wages").  Plaintiff does not state anything in her declaration about whether any other employees received wage statements (or whether any other employees' wage statements were inaccurate in any way) – not even upon information and belief.  She also fails to submit any declarations from other employees or wage statements for other employees to support her class certification motion, despite the fact that the parties have nearly completed discovery in this case.

As the Supreme Court has explained, commonality requires that "the conceptual gap between an individual's . . . claim and the existence of a class of persons who have suffered the same injury must be bridged by significant proof that an employer operated under a general policy . . ."  Wal-Mart, supra, 564 U.S. at 352-53 (emphasis added).  As in Wal-Mart, "[s]uch proof is absent here."  Id. at 339.

Finally, even if a WTPA class were appropriate, Plaintiff offers no justification for her request to certify such a class starting on July 21, 2009 (P. Prop. Order, ¶ 1).  Given that the WTPA wasn't passed into law until nearly two years later, on April 9, 2011, and the first notices were not due until February 1, 2012, Plaintiff's request is plainly unwarranted.  See Lin, supra, 2012 WL 7620734, at *2.  (noting that the WTPA went into effect on April 9, 2011); see also Gold v. N.Y. Life Ins. Co., 730 F.3d 137, 143-44 (2d Cir. 2013) (holding that the WTPA does not apply retroactively).

Accordingly, no class should be certified on this claim not only because Plaintiff has no such claim, but also because she cannot meet the standards for class certification.

**V.     NO CLASS SHOULD BE CERTIFIED ALLEGING VIOLATIONS OF THE N.Y. HOME CARE "WAGE PARITY" LAW**

Plaintiff requests that a State class be certified for the period "on and after March 1, 2014" (P. Memo. bot. p. 3), for employees whom she claims were not paid in accordance with the N.Y. Home Care Wage Parity Law, Pub. Health Law § 3614-c ("Wage Parity"). That law specifies varying levels of wages and benefits, which differ by location, and by time period, that are applicable to home care workers – but only when they perform services on "episodes of care" reimbursed in whole or in part by Medicaid (referred to in the industry as "Medicaid Service Hours"), and not by other payment sources. Id. §§ 3 and 10.

Since there is no private right of action under this statute,[20] Plaintiff has alleged a claim under two theories: that she is a "third-party beneficiary" of contracts which defendants allegedly breached; or that Defendant has been "unjustly enriched" by such alleged breach (Am. Compl., Claim III, ¶¶ 76-80). However, as we show below, Plaintiff has <u>not adduced one iota of evidence</u> to demonstrate any such breach of contract; her claim is entirely unsupported, and amounts to nothing more than a bare allegation. Further, this claim relies and rests upon her faulty claim for 11 additional hours of pay for each 24-hour live-in shift (for which hours she also seeks pay at Wage Parity rates), a claim which without legal basis (<u>see</u> Point 1 above). Finally, even if any such claim could be articulated and supported, Plaintiff cannot show that <u>her</u> claim is "typical" of those of others in the proposed class, since many worked in other locations (where different wage parity rates apply), during various other periods of time (when different wage parity rates applied), and on "episodes of care" or service hours that are excluded because they were not subject to Medicaid reimbursement. Nor can she show that common issues

---

[20]    The statute provides that government payments (such as Medicaid) will not be made unless the location-specific level of "total compensation" is given to employees. Id. § 3614-c(2). This scheme does not allow, or suggest, any private right of action, and no court has found one. See Cohen v. Viray, 622 F.3d 188, 193 (2d Cir. 2010) (private right of action is only available if the statute shows an intent to create one).

predominate, because so many individual calculations will be required to determine liability.  For each of these reasons, no class alleging this Wage Parity claim should be certified.

### A.      **Plaintiff Has Adduced No Evidence To Support This Claim**

Search as one might, there is no evidentiary basis anywhere asserted in Plaintiff's papers to support this purported "Wage Parity" claim.  It is Plaintiff's burden to provide evidence of the breach of contract or violation of law they are asserting upon which to premise her demand for a class.  Jacob, supra, 602 Fed. Appx. at 5.  There is none.

The exhibits to Plaintiff's own Declaration demonstrate that Defendant at all times met or exceeded the wage rate required by Wage Parity for New York City  (and exceeds the lower Long Island rates) in 2014-15 for cases that may be conceivably covered by that law.  (Ex. A to Downie Decl.)  The sole supporting evidence provided is a citation to p. 44 of Ms. Bailey's deposition which merely states that 90% of Carelink's cases are reimbursed by Medicare (Rand Aff., Ex. A, p. 44).  Plaintiff has adduced no evidence of any violation beyond a bare allegation.

Put simply, Plaintiff has failed to meet her evidentiary burden to justify a Rule 23 class.  Nor has she shown that there is a common policy capable of resolution on a classwide basis.  See Wal-Mart, supra 564 U.S. at 350; Jacob, supra 602 Fed. Appx. At 5.  Accordingly, this claim should not be certified for a class.

### B.      **Plaintiff's Claims Are Not "Typical" Of Others Who Were Subject To Differing Wage Parity Levels, Locations and Payors**

Even if Plaintiff produced sufficient evidence supporting this claim, her demanded class would still fail because her claim is not "typical" of those of the purported class, and because individual inquiries will necessarily predominate in any such claim.  To understand the deficiencies in Plaintiff's motion, we must explain the Wage Parity statute itself.

First, the statute sets certain overall wage and benefit levels (referred to as "total compensation") for some, but not all, home care work.  Id.  § 3614-c(3).  It applies only to "episodes of care" reimbursed in whole or in part under Medicaid (often called Medicaid service hours).  Id. §3614-c(10).  It does not apply to privately paid cases, or those insured through sources other than Medicaid.  Id.  Therefore, the source of payment for every case must be examined to determine whether the law applies.

Second, for the same reason, certain service-hours that do not constitute Medicaid-reimbursed "episodes of care" are not subject to the law.  (Id.)  For example, semi-annual aide training hours (referred to as "in-service training"), travel time between cases, or any other services that are not for Medicaid-covered "episodes of care" are not subject to the law.  Id.

Third, Wage Parity applies at rates which vary by location.  Specifically, the Wage Parity rate requirements for cases in New York City are not the same as the rate requirements in Nassau, Suffolk and Westchester.  Compare Id. §3614-c(3)(a) (New York City) with (3)(b) (Nassau, Suffolk, Westchester) (different rates).  Carelink's cases are heavily on the border areas of Queens, New York City and Nassau or Suffolk (Bailey Aff., ¶ 3).  Therefore, the location of every case will have to be examined, in order to ascertain which Wage Parity rates apply there.

Fourth, different Wage Parity rates were phased-in in annual steps on March 1 of each year, 2014, 2015, 2016, etc. in each of the locations; accordingly, different rates apply for each year, as well as each location.  See id. §3614-c(3)(a) and (b).  Therefore, the dates on which services were rendered also must be separately ascertained for each case.

Fifth, Wage Parity provides not only a wage-level, but also a coordinated benefit level as part of a "Total Compensation" package (once again, applicable to Medicaid-reimbursed cases and Medicaid Service Hours only, varying among locations, and phased-in at different points in

31

time).  These benefit levels also vary by date and location, and may be met <u>either</u> by additional wages <u>or</u> by separate fringe benefits not typically shown on payroll records (NY DOH May 2014 FAQ #3 (see App. 11 hereto):  "[T]he only portion of the Total Compensation that cannot be used for benefit contributions is the $10.00 per hour base wage rate.")  In addition, "Total Compensation" under the statute also includes paid sick time, accrued vacation, holiday or weekend premium pay, as well as other expenditures for an employee's benefit.  <u>Id</u>.  §3614-c(1)(b).  These fringe benefits would have to be calculated for each employee, on Medicaid cases only, on each claim and date, in each location, to determine if any alleged violation has occurred.

Against this complicated backdrop, Plaintiff has <u>not</u> met her burden to demonstrate that her particular claims -- even assuming she has any -- are "typical" of any of the classes or subclasses of Wage Parity levels.  For example, in the period <u>after</u> March 2014 that Plaintiff requests for this class (P. Memo. bot. p. 3), Plaintiff worked only until August 2015 (Downie Dep. 39).  Her experience is not "typical" of any subsequent new Wage Parity levels that came in effect in March 2016 or thereafter.  Further, she has not demonstrated whether any of her work was outside New York City, where different Wage Parity rates applied, or what percentage of it was Medicaid service hours, nor how she can represent or exclude those whose hours, on particular cases, were <u>not</u> covered by Medicaid or the Statute.  Her claims, by definition, cannot be "typical" of those in <u>other periods of time</u> at different rates, or in <u>other</u> <u>locations</u> where differing payment levels apply, or of those subject to <u>differing reimbursement sources</u>.  Each of these variables, in addition to the other complexities noted above, would also require individual inquiries rather than common issues of fact or law.

**VI**     **<u>PLAINTIFF IS NOT AN ADEQUATE CLASS REPRESENTATIVE</u>**

"The final prerequisite for class certification under Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the class." <u>Harris v. Initial Sec., Inc.</u>,

2007 WL 703858, at *5 (S.D.N.Y. Mar. 7, 2007); <u>Kline v. Wolf</u>, 702 F.2d 400, 401-403 (2d Cir. 1983) (denying class certification due to inadequacy of representative).  "A class representative is a fiduciary to the class and bears a responsibility to comply with discovery requests, to possess a basic knowledge of the facts, and to participate to some minimal degree in the lawsuit 'to ensure that the party is not simply lending his name to a suit controlled entirely by the class attorney.'" <u>In re Gaming Lottery Sec. Litig.</u>, 58 F. Supp. 2d 62, 76 (S.D.N.Y. 1999).

Where putative class representative suffers from lack of memory or inability to comprehend the issues or evidence, these are bases to deny certification on grounds of inadequacy.  <u>See Darvin v. Int'l Harvester Co.</u>, 610 F. Supp. 255, 256-57 (S.D.N.Y. 1985) (poor memory); <u>Norman v. Arcs. Equities Corp.</u>, 72 F.R.D. 502, 506 (S.D.N.Y. 1976) (failure to answer relevant deposition questions); <u>In re Lloyd's AM. Trust Fund Litig.</u>, 1998 WL 50211, at *12 (S.D.N.Y. Feb. 6, 1998) (lack of understanding of case).  In addition to ability to comprehend the issues and evidence, courts also consider honesty, trustworthiness, and credibility in judging the adequacy of a class representative.  <u>See Savino v. Computer Credit, Inc.</u>, 164 F.3d 81, 87 (2d Cir. 1998).

Here, Plaintiff suffered from what can only be referred to, at best, as a striking failure of memory; at worst, her testimony raises serious issues of credibility (<u>see</u> Bailey Aff. ¶¶ 19-21). Plaintiff responded to many, many inquiries by stating she "doesn't remember."  This occurred with striking frequency.[21]  Many of the items she could not recall were fundamental to her case:

> "Q    Do you know what you're alleging in your complaint against Carelink?"

---

[21]   Below are some of the many things Plaintiff "could not recall."  <u>See e.g.</u>, Downie Dep. at 28 (whether patients were sick or elderly); <u>id.</u> at 29 (settling a prior lawsuit last year); <u>id.</u> at 35 (when last worked for Carelink); <u>id.</u> at 37 (whether she always worked live-in cases); <u>id.</u> at 76 (whether tasks were in the plan of care); <u>id.</u>, at 77 (can't recall if she ever worked for a company she sued); <u>id.</u> at 99-100, 101, 109-10, 116, 121, 124-25, 131-32, 135, 137, 140-41, 142, 144-46, 147-48 (whether she missed sleep, meals or other key facts as to patients she served); <u>id.</u> at 162 (whether she took sick days referenced in her Complaint); <u>id.</u> at 169 (what was covered in orientation); <u>id.</u> at 159 (whether she ever left early or late); <u>id.</u> at 168 (whether she received wage theft notices referred to in the Complaint).

"A    I don't recall."  (Id. at 81; see also 162-63, 168).

These lapses in memory included recent matters that a normal person would surely remember, such as whether she had ever filed a lawsuit before:  she didn't remember; whether she had received any money or a settlement:  she didn't remember; whether her deposition had been taken before:  she didn't remember (Downie Dep. 15, 16, 29, 78-79, 80).  Please note: Plaintiff was the sole named plaintiff on a recent case before this this District Court alleging claims strikingly similar to her claims here; Yvonne Downie v. Family Home Care Services of Brooklyn and Queens, Inc., 15 CV 0862(RA)(KNF) (filed May 19, 2015).  It was filed by the same attorney who represents Plaintiff here.  The docket sheet for the case shows that the Complaint was amended in 2016 (with a consent was signed by her), and that the court was advised of a settlement reached in July 2016 (see Docket sheet, as Appendix 14).  At the deposition, she was shown a copy of the Complaint and Amended Complaint bearing her recent signature, and was again asked the same questions; her continued response: "can't recall" (Downie Dep. 77-79).  Filing a lawsuit, having one's deposition taken, and recovering a settlement – just within the past year or so – are not events that anyone would easily forget. Either her memory is seriously faulty, or her credibility is.

Plaintiff likewise displayed an inability to comprehend questions (see Downie Dep. 16, 18-20, 31-34, 37, 42-43, 44-48, 69, 86, 88-89, 93, 97-98, 113, 162, 166-67, 179-80) and an inability to understand her claims and the evidence.  For example, based on Plaintiff's brief, it is undisputed in this case that Defendants paid Ms. Downie 13 hours for virtually every full 24-hour live-in shift she performed (see Rand Decl., Exs. C and D:  "Thirteen Hours") (Bailey Aff. ¶ 21). Yet Plaintiff appeared unable to comprehend this fact, even when shown that all of her own pay stubs had multiples of 13-hours matching the number of 24-hour shifts (Downie Dep. 81).

She <u>still</u> fails to comprehend this:  Plaintiff has filed <u>a Declaration on this very motion,</u> <u>persisting in claiming she was paid 12 hours per shift,</u> (Downie Decl. ¶ 4) even while her attorney argues 13 (Compare Rand Decl. ¶ 7, Ex. C (stating that Defendants paid "13 hours for 24 hour live-in shifts to Plaintiff Yvonne Downie") <u>with</u> Downie Decl. ¶ 4 stating she was "paid for 12 hours for the 24-hour live-in shifts")).  In a wage-hour case, comprehension of these basic facts is essential.  Because Plaintiff's memory (or testimony) is unreliable and she fails to sufficiently comprehend the issues and evidence, she is not an adequate class representative.  <u>See</u> <u>Darvin</u> <u>supra;</u> <u>Norman</u> <u>supra;</u> <u>In re Lloyd's</u> <u>supra</u>, <u>In re Gaming</u>, <u>supra</u> cited above.

## **CONCLUSION**

For all of the reasons stated above, Defendant respectfully requests this Court deny Plaintiff's motion for certification and grant any other relief as the Court deems just and proper.

Dated: November 10, 2017
      New York, New York

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

*Attorneys for the Defendant*

_____/s/ David Prager_____
By:    David Prager (4009)

600 Third Avenue, 22nd Floor
New York, NY 10016

T:  646.253.2300
F: 646-253-2375
Email:  dprager@bsk.com

104690.5