UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YVONNE DOWNIE,

Plaintiff,

-v-

CARELINK, INC., et al.,

Defendants.

16-CV-5868 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Yvonne Downie, a former home health aide, brings this action against

Defendants Carelink, Inc., Ena Bailey, and several Doe Defendants for violations of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206(a) and 207(a), and the New York Labor Law,

("NYLL"), and for breach of contract and unjust enrichment.  Two employment policies lie at

the crux of Downie's suit: (1) Defendants' alleged failure to pay their employees overtime at

time and one-half their regular rates, as required by the U.S. Department of Labor's regulations

governing home health aides; and (2) Defendants' policy of deducting eight hours for sleep and

three hours for meal breaks from their employees' 24-hour shifts, amounting to a net

compensation of thirteen hours of pay per 24-hour shift.  Plaintiff also alleges that Defendants

violated New York's spread-of-hours law, Wage Theft Prevention Act, and Wage Parity Act.

Plaintiff moves for conditional certification of a collective action under FLSA § 216(b)

for her overtime claims, and for certification of several New York-law classes under Federal

Rule of Civil Procedure 23.  For the reasons that follow, the Court grants Plaintiff's motion for

conditional certification and certifies a Rule 23 class of New York employees who were not paid

proper overtime compensation.  The Court denies certification as to all other proposed classes.

I.    **Background**

Defendant Carelink, Inc. is an employment agency that provides in-home care services to sick and elderly patients.  (Dkt. No. 42-4 ¶ 3.)  Defendant Ena Bailey is Carelink's President and principal owner.  (*Id.* ¶ 1.)

Plaintiff Downie worked for Carelink as a home health aide and maid from October 2012 to October 2015.  (Dkt. No. 31 ("Downie Decl.") ¶ 1.)[1]  Carelink sent Downie to work for clients in New York City and Nassau County.  (*Id.* ¶ 2.)

Plaintiff often worked 24-hour shifts, during which she would stay overnight at a client's house.  During these shifts, Downie's sleep was often interrupted several times per night by her clients; sometimes, she was not offered a bed to sleep on and had to spend the night on a couch.  (*Id.* ¶ 4.)  She often ate while working because she was not accorded a meal break.  (*Id.* ¶ 9.)  Her responsibilities included cleaning the clients' homes, taking out the garbage, making their beds, doing their laundry, and cooking them three meals per day.  (*Id.* ¶¶ 13–14, 19–20.)  At least 30% of her time was spent performing household work.  (*Id.* ¶ 25.)  Downie frequently worked more than 40 hours per week, and when she did, she was allegedly not paid at the proper overtime rate.  (*Id.* ¶ 10.)  She also alleges that she was occasionally required to work for two different clients in the same day, and was not paid for the time and expenses she incurred travelling between the two.  (*Id.* ¶ 5.)

Downie avers that "Defendants hired at least 40 . . . home health aides/maids" who were similarly not paid their proper overtime, not paid for travel time and expenses between clients, not paid minimum wages and regular wage, and not properly compensated for their 24-hour

---

[1]      Bailey avers that Downie left Carelink's employ in August 2015.  (Dkt. No. 42-4 ¶ 4).  For purposes of this motion, the Court need not resolve this factual dispute.

shifts.  (*Id.* ¶ 26.)  Specifically, she named four other aides who told her that they did not receive

pay for travel time, overtime pay, vacation pay or sick pay, or full compensation for their 24-

hour shifts.

Finally, Downie alleges that Defendants failed to provide her with Wage Theft

Prevention Act notices, with the exception of "one notice [she] received shortly after [she]

started working."  (*Id.* ¶ 33.)  She alleges, on information and belief, that other employees were

also not given the same notice.  (*Id.*)

Plaintiff filed this suit in July 2016, alleging that Defendants violated the FLSA, various

NYLL provisions, New York's Wage Parity Act, and New York's Wage Theft Prevention Act.

(Dkt. No. 1.)  She now seeks to certify a FLSA collective action and four New York state law

classes under Rule 23 of the Federal Rules of Civil Procedure.  (Dkt. No. 33 at 3–5.)

## II.     Legal Standards

Plaintiff's motion to certify a FLSA collective action is governed by FLSA § 216(b),

while Plaintiff's motion to certify various class actions is governed by Federal Rule 23.

### A.      FLSA Collective Certification

Section 216(b) of FLSA authorizes employees to sue on behalf of "themselves and other

employees similarly situated" for violations of FLSA's overtime provisions.  29 U.S.C. § 216(b);

*see also Colon v. Major Perry St. Corp.*, No. 12 Civ. 3788, 2013 WL 3328223, at *3 (S.D.N.Y.

July 2, 2013).  To participate in a FLSA collective, similarly situated employees must opt in by

filing their "consent in writing to become . . . a party."  29 U.S.C. § 216(b); *see also Colon*, 2013

WL 3328223, at *3.

The Second Circuit has established a two-step process for certifying a collective action

under FLSA.  "The first step involves the court making an initial determination to send notice to

potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to

whether a FLSA violation has occurred." *Colon*, 2013 WL 3328223, at *4 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)). "At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted-in are in fact 'similarly situated' to the named plaintiffs." *Id.* at *5 (quoting *Myers*, 624 F.3d at 555)). If not, the action may be decertified. *Id.*

The first step of the analysis—called "conditional certification"—"requires only a 'modest factual showing' from plaintiffs that 'they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law.'" *Id.* at *4 (quoting *Myers*, 624 F.3d at 555). In other words, plaintiffs must identify a "factual nexus which binds the named plaintiffs and potential class members together as victims of a particular practice." *Shillingford v. Astra Home Care, Inc.*, 293 F. Supp. 3d 401, 407 (S.D.N.Y. 2018) (quoting *Alvarez v. Schnipper Rests. LLC*, No. 16 Civ. 5779, 2017 WL 6375793, at *2 (S.D.N.Y. Dec. 12, 2017)). "Accordingly, a[] FLSA collective action may be conditionally certified upon even a single plaintiff's affidavit." *Id.* (quoting *Escobar v. Motorino E. Vill. Inc.*, No. 14 Civ. 6760, 2015 WL 4726871, at *2 (S.D.N.Y. Aug. 10, 2015)).

"[A]t the conditional certification stage, 'the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.'" *Hypolite v. Health Care Servs. of N.Y. Inc.*, 256 F. Supp. 3d 485, 489 (S.D.N.Y. 2017) (quoting *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)). "If the employees are similarly situated . . . , 'any factual variances that may exist between the plaintiff and the putative class [will] not defeat conditional . . . certification.'" *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158 (S.D.N.Y. 2014) (second alteration in original) (quoting *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007)).

"[T]he initial conditional certification determination is merely a preliminary finding."

*Lynch*, 491 F. Supp. 2d at 368.  At the second stage, after plaintiffs have opted in and discovery

has occurred, "the court undertakes a more stringent factual determination as to whether

members of the class are, in fact, similarly situated."  *Id.*

> **B.      Rule 23 Class Certification**

Class certification is governed by Federal Rule of Civil Procedure 23.  Section (a) of Rule

23 requires the party seeking certification to establish four prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition, "the movant must show that the action is one of three types described in

Section (b)."  *Jackson*, 298 F.R.D. at 159.  Here, Plaintiff seeks certification under subsection

(b)(3), which requires that a court to find "that the questions of law or fact common to class

members predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy."  Fed. R. Civ. P. 23(b)(3).  To decide whether the predominance and superiority

requirements are satisfied, courts consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation
of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).

The Rule 23 requirements are more than a "mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Rather, the party seeking class certification must actually establish [Rule 23's] requirements by a preponderance of the evidence." *Jackson*, 298 F.R.D. at 159. "While the plaintiff's pleadings are assumed to be true, the court must nevertheless conduct a rigorous analysis to determine whether a class action is appropriate, considering materials outside of the pleadings and weighing conflicting evidence as necessary." *Id.*

## III.    Discussion

Plaintiff seeks to certify a FLSA collective of health aides employed by Carelink who were not paid adequate overtime compensation between January 1, 2015, and October 14, 2015. (Dkt. No. 34 at 1.)  Plaintiff also seeks to certify five Rule 23 classes of health aides under New York state law: (1) employees who were not paid proper overtime compensation under the NYLL; (2) employees who were paid for only 13 hours out of their 24-hour shifts; (3) employees who were not paid a "spread-of-hours" premium; (4) employees who did not receive accurate notices as required by New York's Wage Theft Prevention Act; and (5) employees who were not paid minimum wages under New York's Wage Parity Act.  (Dkt. No. 33 at 3–5.)

### A.    FLSA Overtime Collective Action

Section 206 and 207 of the FLSA establish a minimum wage and overtime pay rate: The minimum wage applies to an employee's first 40 hours worked per workweek, and the statutory overtime rate—one and one-half times the employee's regular rate—applies to each hour worked

over 40.  29 U.S.C. §§ 206–07.  The overtime pay requirement, however, is subject to several statutory exemptions, including for "any employee employed in domestic service employment to provide companionship services for individuals who . . . are unable to care for themselves."  29 U.S.C. § 213(a)(15).

Until 2015, this "companionship exemption" applied to all home healthcare aides, unless they could prove that more than 20% of their working time was spent performing general household work.  *See, e.g.*, *Rodriguez de Carrasco v. Life Care Servs., Inc.*, No. 17 Civ. 5617, 2017 WL 6403521, at *4 (S.D.N.Y. Dec. 15, 2017).  In October 2013, however, the Department of Labor ("DOL") issued an interpretive regulation that excludes aides employed by third-party agencies, such as Carelink, from FLSA's companionship exemption.  *See* 29 C.F.R. § 552.109; *see also Rodriguez de Carrasco*, 2017 WL 6403521, at *4.  This DOL regulation was to take effect on January 1, 2015.  *See* 29 C.F.R. § 552.109.

Before the regulation could take effect, however, its validity was challenged in the District Court for the District of Columbia.  The district court vacated the regulation, *see Home Care Ass'n of Am. v. Weil*, 76 F. Supp. 3d 138, 147–48 (D.D.C. 2014), but the D.C. Circuit reversed and upheld the regulation, *see Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1097 (D.C. Cir. 2015).  On September 14, 2015, DOL publicly stated that it would not bring enforcement actions against employers for violations of the regulation until "30 days after the date the Court of Appeals issues a mandate making its opinion [in *Weil*] effective."  *Rodriguez de Carrasco*, 2017 WL 6403521, at *4 (quoting Application of the Fair Labor Standards Act to Domestic Service; Announcement of 30-Day Period of Non-Enforcement, 80 Fed. Reg. 55,029, 55,029 (Sept. 14, 2015)).  On October 27, 2015, DOL released another statement, identifying November 12, 2015, as the last day of the non-enforcement policy.  *Id*.

In the wake of the litigation over the validity of the DOL regulation, many FLSA defendants have argued, as Carelink does here, that the regulation did not become effective on January 1, 2015.  "The great majority of courts" have concluded, however, that the regulation was effective as of January 1, 2015.  *Rodriguez de Carrasco*, 2017 WL 6403521, at *4 (collecting cases); *see also Shillingford*, 293 F. Supp. 3d at 409 (reaching the same conclusion); *Tagaeva v. BNV Home Care Agency, Inc.*, No. 16 Civ. 6869, 2018 WL 1320661, at *4 (E.D.N.Y. Mar. 13, 2018) (same).  As the court explained in *Green v. Humana at Home, Inc.*, "there is no reason to depart from the general rule that all civil judicial decisions apply retroactively.  As a result, the [D.C. Circuit's] opinion in *Weil* nullified the D.C. District Court's vacatur of the third-party employer regulation, and the regulation therefore should be treated as effective beginning on the regulation's Congressionally prescribed effective date of January 1, 2015."  16 Civ. 7586, 2017 U.S. Dist. LEXIS 162961, at *9 (S.D.N.Y. Sept. 29, 2017).  The Court adopts the reasoning of *Green* and the other cases in this circuit that have reached the same conclusion: The relevant regulations took effect on January 1, 2015.

Therefore, Plaintiff has satisfied her minimal evidentiary burden to establish that Defendants had a common policy of not paying overtime to home health aides who worked more than 40 hours per week and that she is "similarly situated" to other aides who were not paid overtime.  In addition to Plaintiff's own declaration (*see* Downie Decl. ¶¶ 3, 32) and the payroll evidence she submitted (*see* Dkt. No. 33-2), both of which show that Carelink employees were not paid one and one-half times their regular rate for hours over 40 per week, Defendant Bailey also admitted that Carelink did not start paying the proper overtime rate until after October 2015. (*See* Dkt. No. 33-1 at 38:19−23; *see also* Dkt. No. 45-1 at 10–11 (Carelink's "Operations Manager/Accounting" admitting the same).)

8

Although Defendants do not dispute that they had a policy of not paying proper overtime compensation between January 1 and October 15, 2015, they do argue that FLSA's two-year statute of limitations bars any collective claims.  (Dkt. No. 42 at 22.)  A plaintiff bringing a claim for overtime compensation under FLSA must do so "within two years after the cause of action has accrued, unless a plaintiff can show that a defendant's violation of the [FLSA] was willful, in which case a three-year statute of limitation applies."  *Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 277 (E.D.N.Y. 2013) (alteration in original) (quoting *Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 393 (E.D.N.Y. 2013)).  Plaintiff alleges that Defendants' failure to comply with FLSA was willful (Dkt. No. 10 ¶ 65), and thus she contends that the three-year limitations period applies.

Defendants' statute-of-limitations challenge is not appropriately raised at the conditional collective certification stage.  Under the FLSA, the statute of limitations for potential plaintiffs who are not named in the complaint "is not tolled until a plaintiff opts in to the action, that is, files written consent with the court."  *Alves v. Affiliated Home Care of Putnam, Inc.*, No. 16 Civ. 1593, 2017 WL 511836, at *5 (S.D.N.Y. Feb. 8, 2017).  Where, as here, willful violations are alleged, "courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date," especially given that "equitable tolling issues often arise for prospective plaintiffs."  *Id.* at *5 (quoting *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013)).  Therefore, Defendants' statute-of-limitations argument is insufficient to preclude collective certification at this stage.[2]

_____

[2] Even if the two-year statute of limitations for non-willful violations ultimately applies, there still may be potential plaintiffs who could opt in in a timely manner by virtue of individual tolling arguments.  Plaintiff Downie's claims are clearly timely because Carelink did

Because Plaintiff has met her minimal burden at step one of the certification analysis, the Court certifies a § 216(b) collective of Carelink employees who were not paid proper overtime compensation between January 1, 2015, and October 14, 2015.

### B.   New York Class of Employees Who Were Not Paid Overtime

In addition to her collective action for overtime under FLSA, Plaintiff moves to certify a class of employees who were not paid overtime, as required by the NYLL, after January 1, 2015. Because the NYLL itself does not contain an overtime provision, "[o]vertime requirements under the NYLL are governed by regulations promulgated by the New York Department of Labor," *Severin v. Project Ohr, Inc.*, No. 10 Civ. 9696, 2012 WL 2357410, at *6 (S.D.N.Y. June 20, 2012):

> An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of [FLSA], provided, however, that the exemptions set forth in section 13(a)(2) and (4) shall not apply.

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

As explained above, Carelink's home health aides are not subject to FLSA's companionship exemption, and are thus entitled to overtime at one and one-half times their regular rate for any hours exceeding 40 per workweek.  Therefore, Defendants' overtime pay policy violated the NYLL for the same reason that it violated FLSA.  To determine whether class certification is appropriate on this basis, the Court must turn to the Rule 23 factors.

### 1.   Rule 23(a) Factors

First, Plaintiff has adequately established numerosity.  She alleges, and Defendants do not contest, that Defendants employed at least 40 similar home health aides during the relevant

---

not begin complying with the FLSA until October 15, 2015, and this case was filed on July 21, 2016.  (*See* Dkt. No. 1.)

time period and subjected them to the same overtime compensation policy. (*See* Downie Decl. ¶ 26.) These uncontroverted allegations are sufficient to satisfy the numerosity requirement. *See Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 175 (S.D.N.Y. 2008).

The second and third Rule 23(a) factors, commonality and typicality, are likewise satisfied. "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Id.* (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). "Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007)). "Courts have recognized that the commonality and typicality requirements of Rule 23 'tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3).'" *Id.* at 175−76 (quoting *Marisol*, 126 F.3d at 376).

Again, Defendants do not dispute Plaintiff's contentions as to commonality and typicality. Defendant Bailey admits that Carelink had a common policy of not paying overtime during the relevant time period (*see* Dkt. No. 33-1 at 38:19−24; *see also* Dkt. No. 45-1 at 10–11), and Downie likewise avers that she frequently worked more than 40 hours per week but was not paid overtime (*see* Downie Decl. ¶¶ 3, 6). Plaintiff's claims and the claims of the potential class members share common issues of law and fact sufficient to satisfy the commonality and typicality requirements. *See, e.g.*, *Masoud v. 1285 Bakery Inc.*, No. 15 Civ. 7414, 2017 WL 448955, at *5 (S.D.N.Y. Jan. 26, 2017) ("In wage-and-hours cases," the commonality and typicality analysis "focuse[s] on whether the employer had company-wide compensation policies that injured the potential class.").

Finally, the Court must consider whether Downie is an adequate lead plaintiff. Defendant argues that Downie is an inadequate class representative because her deposition testimony raises doubts about her memory and her credibility.

A "[d]etermination of adequacy typically entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Lapin*, 254 F.R.D. at 176 (alteration in original) (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)). In addition, courts may also consider the putative representative's familiarity with the case and her moral character, *see id.*, including her "honesty and trustworthiness," *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998). "[C]lass certification may properly be denied where the class representatives ha[ve] so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Lapin*, 254 F.R.D. at 176 (second alteration in original) (quoting *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077–78 (2d Cir. 1995)).

Like the defendants in *Lapin*, the Carelink Defendants contest Plaintiff's adequacy primarily on the basis of her deposition testimony. Specifically, Defendants point to her inability to recall the answers to numerous questions at her deposition. (*See* Dkt. No. 42 at 32–35 & n.21.) Defendants focus pointedly, for example, on Plaintiff's inability to recall whether she had filed a lawsuit before, received a settlement, or given a deposition, despite the fact that she served as named plaintiff in a case in this district that resulted in settlement. (Dkt. No. 42 at 34.)

Courts have occasionally found plaintiffs to be inadequate in light of serious credibility issues and inconsistencies going to the heart of their claims, but courts will not find a

12

representative inadequate unless such "attacks on [her] credibility . . . are so sharp as to jeopardize the interests of absent class members." *Lapin*, 254 F.R.D. at 177 (quoting *In re Colonial P'ship Litig.* No. H–90–829, 1993 WL 306526, at *5 (D. Conn. Feb. 10, 1993)). Defendants do not identify any case where a mere failure to recall certain relevant facts justified a finding of inadequacy, especially where, as here, those facts were not critical to the claims. (*See* Dkt. No. 42 at 33 n.21 (inability to recall, among other things, whether patients were sick or elderly, when Plaintiff last worked for Carelink, whether Plaintiff always worked live-in cases, and what was covered in orientation).)  "[C]ourts that have found a plaintiff to be an inadequate lead plaintiff due to credibility issues have done so where the issues were much more substantial."[3] *Lapin*, 254 F.R.D. at 178 (collecting cases).  For example, in *Darvin v. International Harvester Co.*, upon which Defendants rely, the plaintiff not only "repeatedly stated that his memory regarding the complaint and his [relevant stock] dealings . . . were poor," but also changed his testimony on key facts numerous times.  610 F. Supp. 255, 257 (S.D.N.Y. 1985).  In contrast, Downie's inability to recall certain facts at her deposition "does not impugn [her] credibility in any meaningful way," is "not so material that it renders [her] inadequate to represent the proposed class," and does not "jeopardize the interests of the class in any way." *Lapin*, 254 F.R.D. at 177–78.[4]

---

[3]      Similarly, the fact that Downie's declaration states that she was only paid for 12 hours out of each 24-hour shift, rather than thirteen (as her attorney argues), is not relevant to her overtime class claims, and does not render her inadequate as a class representative.  (*See* Dkt. No. 42 at 34–35.)  The Court is not persuaded that either this discrepancy or Defendants' other citations to Downie's deposition testimony indicate that Plaintiff is unable to comprehend questions or understand the basic facts of the case.  (*See* Dkt. No. 42 at 34.)  Plaintiff's declaration demonstrates sufficient familiarity with and understanding of the basic facts relevant to her overtime class claim.

[4]      Defendants do not challenge the adequacy of class counsel, William Coudert Rand, and the Court sees no reason to depart from other cases finding his representation adequate.  *See, e.g.*, *Rodriguez de Carrasco*, 2017 WL 6403521, at *8.

The Court concludes that the adequacy requirement is met here.

### 2.     Rule 23(b)(3) Factors

Because Plaintiff seeks certification under Rule 23(b)(3), she must also establish (1) that "questions of law or fact common to class members predominate" and (2) that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "The first requirement, predominance, will be met 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"  *Lapin*, 254 F.R.D. at 180 (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).  The second requirement, superiority, "will be met if, 'in terms of fairness and efficiency,' the Court finds that the advantages of a class action are greater than those of 'alternative available methods of adjudication.'"  *Id.* at 186 (quoting *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 91 (S.D.N.Y. 2007)).

Beyond their unavailing arguments about the effective date of the relevant DOL regulations, Defendants do not contest predominance and superiority.  Here, as in *Rodriguez de Carrasco*, both Rule 23(b)(3) requirements are satisfied: "the main legal issue—whether the defendants violated New York state law by not paying time and one half the regular rate for overtime hours—is subject to generalized proof," and "a class action is the superior method for resolution" because a "one-time resolution as to defendants' liability for overtime in the challenged period will be efficient for all parties."  *Rodriguez de Carrasco*, 2017 WL 6403521, at *9.

The Court certifies a New York class of Carelink employees who were not paid time and one-half for overtime after January 1, 2015.

### C.      New York Class of Employees Paid for Thirteen Hours out of Their 24-hour Live-in Shifts

Plaintiff seeks to certify a Rule 23 class action of aides who worked 24-hour shifts as Carelink employees since July 21, 2010.  (Dkt. No. 30 at 1.)  She argues that Carelink had a policy to pay such employees for only thirteen hours out of each 24-hour shift, and that this blanket policy violates the minimum wage provisions of the New York Labor law.  Defendants respond by challenging the legal premise underlying her claim: According to Carelink, its compensation policy for 24-hour aides complies with the New York Department of Labor's interpretation of its minimum wage regulations, and that guidance is controlling here.  The Court agrees with Defendants and concludes that Defendants' compensation policy did not violate New York's minimum wage law.

Section 652 of the NYLL requires employers to pay their employees a minimum hourly wage.  N.Y. Lab. Law § 652.  The relevant implementing regulations, promulgated by the New York Department of Labor ("NYDOL") provide:

> (b) The minimum wage shall be paid for the time an employee is permitted to work, or is required to be available for work at a place prescribed by the employer, and shall include time spent in traveling to the extent that such traveling is part of the duties of the employee. However, a *residential employee*—one who lives on the premises of the employer—shall not be deemed to be permitted to work or required to be available for work: (1) during his or her normal sleeping hours solely because he is required to be on call during such hours; or (2) at any other time when he or she is free to leave the place of employment.

N.Y. Comp. Codes R. & Regs. tit, 12, § 142-2.1(b) (emphasis added).  Based on this regulation, Plaintiff argues that she and the putative class members were non-residential employees, and were therefore entitled to at least minimum wage for *every hour* of their 24-hour shifts.  (Dkt. No. 46 at 3.)

Plaintiff's argument, however, ignores relevant interpretive guidance from the NYDOL. In March 2010, the NYDOL issued an opinion letter, which explained that "'live-in employees . . . must be paid not less than for thirteen hours per twenty-four hour period provided that they are afforded at least eight hours for sleep and actually receive five hours of uninterrupted sleep, and that they are afforded three hours for meals,' <u>regardless of whether they are residential employees or not</u>."[5] *Rodriguez de Carrasco*, 2017 WL 6403521, at *6 (alteration and emphasis in original) (quoting N.Y. St. Dep't of Labor, Op. No. RO-09-0169 at 4 (Mar. 11, 2010)).[6]

"The [NYDOL's] interpretation of a statute it is charged with enforcing is entitled to deference.  The construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld."  *Severin*, 2012 WL 2357410, at *8 (quoting *Samiento v. World Yacht Inc.,* 10 N.Y.3d 70, 79 (2008)).  Therefore, the question

---

[5]      On October 25, 2017, the NYDOL added the following provision to § 142-2.1(b):

> Notwithstanding the above, this subdivision shall not be construed to require that the minimum wage be paid for meal periods and sleep times that are excluded from hours worked under the Fair Labor Standards Act of 1938, as amended, in accordance with sections 785.19 and 785.22 of 29 C.F.R. for a home care aide who works a shift of 24 hours or more.

N.Y. Comp. Codes R. & Regs. tit, 12, § 142-2.1(b); *see also Rodriguez de Carrasco*, 2017 WL 6403521, at *6–7.  As the court noted in *Rodriguez de Carrasco*, this addition was intended to "codify the Commissioner's longstanding and consistent interpretation that compensable hours worked under the State Minimum Wage Law do not include meal periods and sleep time of home care aides who work shifts of 24 hours or more."  2017 WL 6403521, at *7.

[6]      It is worth emphasizing that the term "live-in employee" does not necessarily mean an employee who resides full-time on the premises of their employer.  *See* N.Y. St. Dep't of Labor, Op. No. RO-09-0169 at 4; *see also See Tokhtaman v. Human Care, LLC*, 52 N.Y.S.3d 89, 91 (App. Div. 1st Dep't 2017) (describing NYDOL's policy that "'live-in employees,' *whether or not they are 'residential employees,'*" must be paid for thirteen hours out of each 24-hour shift, provided that they receive adequate sleep and meal breaks).  Here, it is not disputed that Plaintiff was a "live-in" employee.  (*See* Dkt. No. 34 at 16.)

whether Defendants' compensation policy violated New York's minimum wage law is contingent on whether the NYDOL's interpretation of its regulation is rational and reasonable.

As other courts in this circuit have observed, state appellate courts and federal district courts have arrived at conflicting answers to this question. *See, e.g.*, *Shillingford*, 293 F. Supp. 3d at 415; *Rodriguez de Carrasco*, 2017 WL 6403521, at *6. Although the New York Court of Appeals has not addressed the question, lower state courts have concluded that the NYDOL's opinion letter conflicts with the plain language of the regulation, and they have therefore held that non-residential home health aides are entitled to pay for every hour of their 24-hour shifts. *See Tokhtaman v. Human Care, LLC*, 52 N.Y.S.3d 89, 91 (App. Div. 1st Dep't 2017); *Andryeyeva v. N.Y. Health Care, Inc.*, 61 N.Y.S.3d 280, 282−83 (App. Div. 2d Dep't 2017); *Moreno v. Future Care Health Servs., Inc.*, 61 N.Y.S.3d 589, 591 (App. Div. 2d Dep't 2017). In contrast, federal courts in this circuit have consistently deferred to the NYDOL's opinion letter. *See Rodriguez de Carrasco*, 2017 WL 6403521, at *7; *Severin*, 2012 WL 2357410, at *9; *Shillingford*, 293 F. Supp. 3d at 417; *Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc.*, No. 16 Civ. 541, 2017 WL 2178426, at *2−3 (E.D.N.Y. May 17, 2017); *Rodriguez v. Avondale Care Grp., LLC*, No. 16 Civ. 3084, 2018 WL 1582433, at *5 (S.D.N.Y. Mar. 27, 2018). In short, starting with Judge Cote's analysis in *Severin*, these federal courts have uniformly concluded that the NYDOL's opinion letter reasonably interpreted the phrase "available for work at a place prescribed by the employer":

> The regulation obligates employers to pay non-exempt employees the minimum wage "for the time [employees are] permitted to work, or *[are] required to be available for work at a place prescribed by the employer* [.]" 12 N.Y.C.R.R. § 142–3.1 (emphasis added). The DOL Opinion Letter, in turn, interprets what it means to be "available for work at a place prescribed by the employer" in the context of home health aides working 24–hour shifts in the home of a client. According to the DOL, a "live-in" home health aide is only

> "available for work at a place prescribed by the employer" for
> thirteen hours of the day, provided the aide is afforded at least eight
> hours for sleep and actually receives five hours of continuous sleep.

*Severin*, 2012 WL 2357410, at *8 (alterations in original).

The Court agrees with the uniform view of federal courts in this district, and concludes that the NYDOL's interpretation of the regulation governs.  In doing so, the Court remains "mindful that an intermediate state appellate court's reasoned judgment should not be 'disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'"  *Rodriguez*, 2018 WL 1582433, at *5 (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).  Nonetheless, the Court concludes that, in light of the reasoning of *Severin* and its progeny, the New York Court of Appeals is unlikely to adopt the view of the intermediate appellate courts.

Thus, the Court concludes that Carelink was permitted under New York law to deduct eleven hours for sleep and meal breaks from its employees' 24-hour shifts, amounting to thirteen compensable hours per shift, assuming that the employees actually took such breaks to sleep and eat.  There is no need to further "belabor matters with a discussion of the requirements under Rule 23[]."  *Shillingford*, 293 F. Supp. 3d at 417.  Because an aide must be paid for the full 24 hours only if she does not receive appropriate meal and sleep breaks, "individualized and not common questions predominate," and "class action is not the superior method of adjudication." *Rodriguez de Carrasco*, 2017 WL 6403521, at *9.  Plaintiff's motion to certify a class of aides who were paid only thirteen hours per each 24-hour shift is denied.

### D.    New York Spread-of-Hours Class

Plaintiff seeks to certify a class of employees based on violations of New York's spread-of-hours law, which provides that employees "shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required [by New York's minimum wage

law] for any day in which . . . the spread of hours exceeds 10 hours." N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.4.  The Court denies certification on this issue.

First, Defendants contend that Plaintiff cannot establish a company-wide policy to violate the spread-of-hours law because employees like Downie, who received more than the minimum wage, were not entitled to spread of hours pay.  (Dkt. No. 42 at 24.)

Defendants are correct that New York's spread-of-hours law does not apply to plaintiffs who earned substantially more than the minimum wage.  *See Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 369 (S.D.N.Y. 2012).  According to Defendant Bailey, Plaintiff's wages during her employment with Carelink always exceeded the minimum wage under NYLL § 652 by at least one dollar per hour (Dkt. No. 42-4 ¶ 17), which would more than offset the spread-of-hours premium Plaintiff would have otherwise received during a thirteen-hour shift. Plaintiff's payroll evidence supports Bailey's position.[7]  (*See* Dkt. No. 33-2; Dkt. No. 31 at 8–13.)

Notably, Plaintiff does not offer any response to Defendants' argument about her eligibility for a spread-of-hours premium based on her above-minimum wage.  Perhaps this is because Plaintiff's spread-of-hours theory is contingent on her argument that she was entitled to be paid for the full 24 hours of each shift, rather than the thirteen hours for which she was generally compensated.  *Cf. Tokhtaman*, 52 N.Y.S.3d at 91 ("Because the viability of plaintiff's 'spread of hours' claim likewise turns on whether plaintiff is entitled to be paid for the full 24 hours worked or only thirteen of those hours, the motion court correctly denied the motion to

---

[7]  There is evidence that one employee received the minimum wage of $8.75 per hour for two weeks in June 2015. (Dkt. No. 33-2 at 6.)  It is impossible to tell from this payroll evidence, however, whether that employee's spread of hours exceeded 10 hours at any time during either week.  This evidence alone does not support certification of a class.

dismiss as to that claim." (internal citation omitted)).  Because the Court concludes that Plaintiff was not automatically entitled to 24 hours' pay for every 24-hour shift, her spread of hours claim is also rejected, to the extent that it relies on *Tokhtaman*'s logic.

The Court denies class certification on this issue.

### E.      New York Wage Theft Protection Act Class

Plaintiff next seeks certification of a class of employees who worked 24-hour shifts and were not given accurate wage notices under New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195.

Plaintiff's motion fails the commonality and typicality requirements of Rule 23(a).  First, she provides no affirmative evidence that Defendants had a common policy of non-compliance with the WTPA's notice requirement.  Plaintiff merely alleges on information and belief that other home health aides were not given the required notice.  (Downie Decl. ¶ 33.)  Without further factual support, this information-and-belief allegation is insufficient to establish commonality.  *Cf. Weiss v. Fein, Such, Kahn & Shepard, P.C.*, No. 01 Civ. 1086, 2002 WL 449653, at *2 (S.D.N.Y. Mar. 22, 2002) (denying certification for lack of numerosity based on absence of factual support for information-and-belief allegations about the size of the proposed class).

Moreover, to the extent Defendants actually failed to provide accurate WTPA notices to their employees, Plaintiff's claim would not be typical.  She admits that she received a WTPA notice shortly after she started working.  (Downie Decl. ¶ 33.)  As Defendants correctly argue, although the WTPA required them to provide their employees a notice "[1] at the time of hiring, and [2] on or before February first of each subsequent year of the employee's employment," the statute provides a private right of action to enforce only the *former* requirement.  *Krupinski v. Laborers E. Region Org. Fund*, No. 16 Civ. 9923, 2017 WL 3267764, at *6 (S.D.N.Y. July 31,

2017) (alterations in original) (quoting 2010 Sess. Law News of N.Y. Ch. 564) (collecting

cases).  Because Defendants provided Downie with her initial WTPA notice, her claim would not

be typical of those employees who have a private right of action to enforce their rights to receive

such an initial notice.[8]

Again, Plaintiff does not meaningfully respond to either of these points.  The Court again

assumes that this is because she believes Defendants' failure to pay her automatically for all 24

hours per 24-hour shift rendered her WTPA notice inaccurate.  Because the premise of that

argument has already been rejected, certification is denied on this claim as well.

### F.     New York Wage Parity Act Class

Finally, Plaintiff seeks to certify a class of aides who were not paid minimum wage under

New York's Wage Parity Act, N.Y. Pub. Health Law § 3614-c.  The Wage Parity Act requires

that, after March 1, 2014, home healthcare aides receive "total compensation" of $14.09 per

hour.  *Rodriguez de Carrasco*, 2017 WL 6403521, at *10.  A portion of this total compensation

may be paid in the form of benefits and paid leave.  N.Y. Pub. Health Law § 3614-c(1)(b);

*Rodriguez*, 2018 WL 1582433, at *9.  Aides must receive "at least $10 in cash, and up to $2.40

in health care benefits and up to $1.69 in additional compensation."  *Rodriguez de Carrasco*,

2017 WL 6403521, at *10.

Plaintiff asserts that "she did not get benefits equal to the $14.09 Wage Parity Act

minimum wage, . . . and Defendants have not shown proof of payment of the Wage Parity Act

---

[8]     The Court also notes that the current version of the WTPA requires employers to provide a written notice at the time of hiring only and does not require subsequent yearly notices. *See Cazarez v. Atl. Farm & Food Inc.*, No. 15 Civ. 2666, 2017 WL 3701687, at *5 (E.D.N.Y. May 31, 2017), *report and recommendation adopted*, 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017) ("By an amendment to the WTPA, that provision changed, effective February 27, 2015, to one that required employers to provide written wage notices only 'at the time of hiring.'") (quoting 2014 N.Y. Laws ch. 537 § 1, *amending* N.Y. Lab. Law § 195(1-a)).

benefits." (Dkt. No. 46 at 6.)  But Plaintiff, not Defendants, has the burden to adduce evidence

in support of her motion for class certification, *see, e.g.*, *Newman v. RCN Telecom Servs., Inc.*,

238 F.R.D. 57, 72 (S.D.N.Y. 2006), and none of the evidence Plaintiff has submitted supports

her contention that Defendants had a policy to violate the Wage Parity Act.  To the contrary,

Downie's paystubs and payroll evidence demonstrate that Defendants were complying with the

Wage Parity Act's requirement to pay aides at least $10 per hour.  (Dkt. No. 31 at 11–13; Dkt.

No. 33-2 at 2–3.)  Like the payroll evidence submitted in *Rodriguez de Carrasco*, Downie's

evidence gives no "indication as to benefits and supplementary income any [home health aide]

might be receiving.  The pay stubs indicate only base pay rate, with which defendants are in

compliance." 2017 WL 6403521, at *10.

 The Court concludes that Plaintiff has not provided sufficient evidence that Defendants

failed to comply with the Wage Parity Act, and denies certification on this claim.[9]

## IV. Conclusion

 For the foregoing reasons, Plaintiff's motion for conditional certification of a collective

action under 29 U.S.C. § 216(b) is GRANTED.  The Court certifies an FLSA collective of

employees who were not paid time and one-half overtime between January 1, 2015, and October

14, 2015.

 Plaintiff's motion for class certification under Rule 23 is GRANTED IN PART: The

court certifies a New York state Rule 23(b)(3) class of employees who were not paid time and

one-half overtime after January 1, 2015.  The Court denies certification as to all other proposed

classes.

---

[9] Plaintiff again purports to rely on *Tokhtaman*, 52 N.Y.S.3d at 91, in support of her Wage Parity Act claim.  To the extent that she is arguing that she was paid for only thirteen out of 24 compensable hours, that argument has already been rejected.

Plaintiff has submitted a proposed collective action notice.  (Dkt. No. 32-1.)  The parties shall confer on proposed forms of notice for the collective and for the Rule 23 class, and they shall submit the proposed notices to the Court on or before August 9, 2018.

The Clerk of Court is directed to close the motion at Docket Number 30.

SO ORDERED.

Dated: July 26, 2018
       New York, New York

                                    _____
                                           J. PAUL OETKEN
                                    United States District Judge